**Harry R. BOOTH, Plaintiff,**

v.

**GENERAL DYNAMICS CORPORATION,**
a foreign corporation, Defendant.

No. 66 C 673.

United States District Court
N. D. Illinois, E. D.

Jan. 25, 1967.

Harry R. Booth, Chicago, Ill., for plaintiff.

Albert E. Jenner, Jr., Edward R. Johnston, Keith F. Bode, Raymond, Mayer, Jenner & Block, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

■ Plaintiff brought this class action on behalf of the taxpayers of Cook County, Illinois, to obtain equitable relief against defendant's allegedly fraudulent deprivation of the taxpayers' rights in property owned by the Metropolitan Sanitary District of Greater Chicago.[1] The defendant has moved to dismiss the complaint and has urged several grounds in support of its motion.

While we agree with defendant's contention that plaintiff has no standing to sue under Illinois law [1a] and, therefore, no standing to sue in this court under our diversity jurisdiction, we do not agree that plaintiff is entirely foreclosed from seeking federal relief. Contrary to defendant's position, we conclude that Illinois courts do recognize that municipal taxpayers have an equitable interest in municipal property, that municipal taxpayers do have standing to enjoin federal constitutional deprivations of that equitable property right and, finally, that the amended complaint alleges facts which present a "case or controversy" within the jurisdictional grant of Article III of the federal constitution.[2]

Further, we conclude that while equitable relief to protect property rights from constitutional deprivation cannot be sought under the "civil rights" statutes,[3] protection can be invoked under this court's general federal question jurisdiction.[4] The complaint raises substantial federal questions, and since we conclude that this suit is maintainable as a class action under present Rule 23 of the Federal Rules of Civil Procedure, the claims of the individual members of the class can be aggregated to meet the jurisdictional amount requirement of § 1331.

In order to treat defendant's many faceted challenge to the sufficiency of the complaint coherently, we will, after a brief synopsis of plaintiff's allegations, deal separately with defendant's arguments which assert plaintiff's failure to state a claim and defendant's arguments which question our jurisdiction.

The complaint alleges that the defendant received valuable leases of Sanitary District land at grossly inadequate rentals pursuant to a fraudulent conspiracy between defendant and officials of the Sanitary District. Plaintiff claims that these "give-away" leases constitute a a fraud on Sanitary District taxpayers and also violate those taxpayers' rights to due process and equal protection under the fourteenth amendment to the United States Constitution. He asks this court

---

1. The complaint states that this action is brought on behalf of the taxpayers of Cook County, Illinois. However, the challenged activity involves only the Metropolitan Sanitary District. While the corporate limits of the Sanitary District are included within the corporate limits of Cook County, the boundaries of these two municipal corporations are not coterminus. Only those taxpayers who reside within the corporate limits of the Sanitary District have standing to challenge the tax since only those taxpayers have tax liability to support district operations. We

therefore grant the plaintiff leave to amend the complaint to properly identify the class he represents.

1a. See Booth v. Metropolitan Sanitary District of Greater Chicago et al., Ill.App. (1st Dist.), Jan. 24, 1967, 224 N.E.2d 591.

2. U.S.Const., Art. III, § 2.

3. 28 U.S.C. § 1343, 42 U.S.C. § 1983, 42 U.S.C. § 1985.

4. 28 U.S.C. § 1331.

to impose a constructive trust for the benefit of Sanitary District taxpayers on certain funds and property now held by defendants and other individuals to whom the defendant has made payments in furtherance of the asserted conspiracy.

## I

Defendant's contention that the complaint fails to state a claim upon which relief can be granted rests on several grounds. It argues that plaintiff lacks standing to sue under state law since he failed to allege facts showing special damage beyond the damage suffered by taxpayers in common. Defendant concludes that this court is therefore powerless to grant plaintiff relief under our diversity jurisdiction since that jurisdiction is based on the application of substantive state law. Defendant also contends that plaintiff has not raised any federal questions which might entitle him to relief. It argues that Illinois law does not recognize any property right in the taxpayer and that, therefore, no property right existed in plaintiff which could be subject to constitutional deprivation. It further claims that a suit by municipal taxpayers to enjoin the misuse of public property cannot assert the deprivation of individual taxpayers' constitutional rights as a basis for relief. Finally, defendant argues that Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), which denied standing to a federal taxpayer seeking to enjoin a federal expenditure, must also be held to bar the assertion of federal rights in a suit by a municipal taxpayer to enjoin the misuse of municipal assets.

■ We agree with defendant's claim that plaintiff is barred from state relief. Illinois law is clear that, absent a showing of special injury, a taxpayer does not have standing to demand equitable relief against the misuse of public land. Droste v. Kerner, 34 Ill.2d 495, 217 N.E.2d 73 (1966). Plaintiff seeks to avoid the impact of Droste by relying on the distinction made there between taxpayer suits for misuse of public funds and taxpayer suits for misuse of public real

estate. There, the Illinois Supreme Court acknowledged that a taxpayer has standing to sue for misuse of public funds but held that a showing of special damage was necessary in a suit for misuse of public real estate. Plaintiff argues that since the complaint alleges the misuse of public funds, his action is not barred by the Droste holding.

■ While the complaint does allege that public funds have been expended, that allegation alone is not enough to avoid the special damage bar. The only expenditure alleged in the complaint involves the improvement of waterways, and that expenditure is not here challenged by the plaintiff. The transactions of which the plaintiff complains involve only the leasing of real estate, not the expenditure of public funds. The misconduct alleged here therefore falls squarely within the special damage restriction of Droste.

Plaintiff attempts a further distinction of the Droste holding by arguing that fraud exists in this case, while fraud was not an element of the suit there. He fails to cite any Illinois cases which hold that the special damage prerequisite to a suit for misuse of public land does not apply where fraud is involved. The potpourri of authorities cited by plaintiff in support of this alleged distinction can only stand for the general proposition that fraud is actionable. It does not support the conclusion that the special damage requirement does not apply to this type of case.

As his final attempt to avoid the special damage bar, plaintiff charges that the special damage rule violates the equal protection clause of the fourteenth amendment in that, as applied here, it makes an invidious discrimination between wealthy property owners and poor taxpayers. While we can conceive a situation where a specific application of the special damage rule might result in a classification within the proscription of the equal protection clause, we have no basis for making such a determination here. Plaintiff has not alleged any facts to support a conclusion that special damage resulting from the allegedly fraudu-

lent leases would be suffered disproportionately by wealthy property owners or that they could establish special damages more easily than other property owners.

Defendant argues that the existence of the special damage rule is proof that Illinois law does not recognize any property right held by municipal taxpayers in municipal real estate. Since plaintiff's constitutional claims are based on his alleged equitable property interest, defendant concludes that the constitutional claims are without merit in light of the non-existence of such interest.

We disagree. The theoretical basis of the special damage rule is at present highly confused.[5] However, in none of the cases cited by the defendant do we find any indication that the special damage rule is based on the theory that the taxpayer lacks an interest in public property. Indeed, the rationale for taxpayer suits to enjoin the misuse of public property is based on the taxpayers' equitable interest in public property. Jones v. O'Connell, 266 Ill. 443, 107 N.E. 731 (1914); Fergus v. Russel, 270 Ill. 304, 110 N.E. 130 (1915).

Defendant next argues that a municipal taxpayers' suit to enjoin the misuse of public property cannot assert deprivations of individual taxpayer's constitutional rights as grounds for relief. In support of this argument, defendant cites Otto v. Somers, 332 F.2d 697 (6 Cir. 1964). In *Somers,* the Court of Appeals for the Sixth Circuit applied a derivative suit analysis to a municipal taxpayers' suit to enjoin the misuse of public funds. The court considered the right of action to lie in the municipal corporation, not in the taxpayers. Since the court considered the taxpayers to be suing not in their own right but in the interest of the municipal corporation, it concluded that the taxpayers could not assert a deprivation of their own constitutional rights as a ground for relief.

While the court in *Somers* reached an accurate conclusion in light of its derivative suit analysis, plaintiff is not here asserting a derivative right. Under Illinois law, the right asserted in a taxpayers' suit is not the legal property right held by the municipal corporation; the action rests on the taxpayers' equitable ownership of the public property. Jones v. O'Connell; Fergus v. Russel, supra.

Nor are we convinced by the two other cases cited by defendant in support of its argument that individual constitutional deprivations cannot be asserted in an action such as this. In Owensboro Waterworks Co. v. City of Owensboro, 200 U.S. 38, 26 S.Ct. 249, 50 L.Ed. 361 (1906), the Supreme Court held that the mere illegality under state law of an expenditure of public funds did not create a federal constitutional question. The court observed that the challenged expenditure, while illegal under state law, might be consistent with federal constitutional standards. However, the court did not hold that a taxpayer could never challenge a disposition of public property on the ground that his constitutional rights had been impinged by the disposition. In Hickey v. Illinois Central R.R., 278 F.2d 529 (7 Cir. 1960), the Circuit Court of Appeals for the Seventh Circuit held that it lacked jurisdiction over a state taxpayers' suit because no diversity jurisdiction existed and no federal question had been raised. Since plaintiff has here raised specific federal constitutional issues, the *Hickey* case does not preclude this court from accepting jurisdiction.

Defendant's attempt to have the standing prohibition set forth in Frothingham v. Mellon, supra, applied to any municipal taxpayer's assertion of federal constitutional claims is clearly specious. The Supreme Court in *Frothingham* did not hold that a taxpayer lacked standing to assert constitutional claims in any attack on any public expenditure. Indeed, in holding that the interest of a federal taxpayer in a specific federal expenditure was *de minimis* the court took pains to recognize the more substantial property interest of the municipal taxpayer in

---

5. See Justice Schaefer's articulate analysis of the sources of the special damage rule in his dissenting opinion in Droste v. Kerner, supra, 217 N.E.2d, at 79.

municipal assets.[6] There is no basis for asserting that the court considered municipal taxpayers to be precluded from attacking municipal expenditures on constitutional grounds.

## II

Our jurisdiction over the instant controversy is invoked by plaintiff under 28 U.S.C. § 1331, 28 U.S.C. § 1332(a), 28 U.S.C. § 1343, 42 U.S.C. § 1983, and 42 U.S.C. § 1985. Section 1332(a) governs jurisdiction of controversies between citizens of different states and here controls any claims plaintiff may have under state law. Sections 1343, 1983, and 1985 grant jurisdiction over claims involving alleged deprivation of "civil rights". Finally, section 1331 grants general jurisdiction over claims involving both a federal question and an amount in controversy in excess of $10,000. Any of plaintiff's federal claims not covered by the "civil rights" statutes must therefore meet the jurisdictional requirements of section 1331.

 We need not deal with defendant's attack on our diversity jurisdiction since we have previously concluded that plaintiff lacks standing to sue under Illinois law. A study of defendant's challenges to the different bases of our federal jurisdiction leads us to conclude that, while we lack jurisdiction under the "civil rights" statutes, we have jurisdiction under section 1331. We also believe that plaintiff's complaint states a "case or controversy".

 Plaintiff's claims that he was deprived of equal protection and due process in violation of the fourteenth amendment are grounded in his assertion, as a taxpayer, of equitable ownership of Sanitary District property. The "civil rights" statutes do not confer jurisdiction over action based on constitutional deprivations of property rights. Fuller v. Volk, 351 F.2d 323 (3 Cir. 1965); Ream v. Handley, 359 F.2d 728 (7 Cir. 1966);

Gray et al. v. Morgan, 7 Cir., Dec. 22, 1966, 371 F.2d 172.

 In order to confer jurisdiction under section 1331 the amount in controversy must be in excess of $10,000. Defendant argues that plaintiff has failed to allege facts which would support a conclusion that plaintiff's interest exceeds $10,000. Defendant further argues that the claims of individual taxpayers in a taxpayer class suit cannot be aggregated for the purpose of meeting the jurisdictional amount requirement. Contrarily, plaintiff argues that the claims of individual members of a class can be aggregated in a class suit.

Although an apparent contradiction exists between the authorities cited by plaintiff and defendant, that conflict rests on the now irrelevant distinction between so-called "true" and "spurious" class suits. The right to aggregate claims in a class suit depends on whether the suit is maintainable as a class action. Those cases which allowed aggregation found that the right asserted and the relief sought were for the welfare of the entire body politic rather than for the individual plaintiffs. They concluded that a "true" class action existed. Brown v. Trousdale, 138 U.S. 389, 11 S.Ct. 308, 34 L.Ed. 987 (1891). Those cases which disallowed aggregation found that the right asserted was peculiar to the individual plaintiffs, and those cases were therefore considered "spurious" class suits. Russell v. Stansell, 105 U.S. 303, 26 L.Ed. 989 (1881); Scott v. Frazier, 253 U.S. 243, 40 S.Ct. 503, 64 L.Ed. 883 (1920); See 3 Moore's Federal Practice, par. 23.13, pp. 3482, 3483.

The recent amendments to the Federal Rules of Civil Procedure have extinguished the tortured distinction between "true" and "spurious" class actions.[7] New standards for determining whether a class action is maintainable were established under the new Rule 23. It is by

---

6. 262 U.S. at 486, 43 S.Ct. 597.

7. See Advisory Committee's Note to Rule 23. 39 F.R.D. 69, at 98.

these new standards,[8] rather than under the outworn authorities cited by the present litigants, that we must determine whether this suit may be maintained as a class action, and consequently, whether the claims of all members of the class may be aggregated to meet the jurisdictional amount.

We conclude that a taxpayer suit to impose equitable restraints on the allegedly illegal dispositon of public property is maintainable as a class action under the amended rule 23. That this action meets the prerequisites of subsection (a) of Rule 23 [9] seems clear. The joinder of all taxpayers whose taxes support the operations of the Sanitary District would surely be impracticable. The right asserted by the plaintiff, his interest as a taxpayer in public land, presents questions of fact and law common to all taxpayers whose taxes support the Sanitary District, and that right is typical of the claims of the class. Finally, we believe that the instant plaintiff possesses the skill and integrity necessary fairly and adequately to protect the interests of the class.

In determining what constitutes adequate representation in a class action, the size of the class and the nature of the action should be considered. Eisen v. Carlisle & Jacquelin, 41 F.R.D. 147 (S.D.N.Y.1966). While the instant plaintiff alone might be considered inadequate to represent a large class seeking varied and complex private relief, the taxpayer suit device would lose its utility if we held that a single taxpayer could not provide representation for his fellow taxpayers. Without the searching and determined scrutiny of gadfly taxpayers, often solitary in their pursuit of justice, many excesses of governmental administration might escape unnoticed. In order for the taxpayer suit to remain effective as a watchdog instrument for the public welfare, the ability of a single individual to maintain such an action must be recognized.

The instant suit also meets one or more of the additional necessary conditions set forth in subsection (b) of Rule 23.[10] The

---

**8.** Where an action was pending at the time the amended rules went into effect, July 1, 1966, the trial court has been directed to apply the amended rules unless their application would result in injustice. 39 F.R.D. 69, at 251. No apparent injustice would result from an application of the amended rules in this case.

**9.** "(a) Prerequisites to a Class Action: One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**10.** "(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish in-

compatible standards of conduct for the party opposing the class, or

"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of

prosecution of separate actions by individual members of the instant class would create the risks set forth in parts 1(A) and 1(B) of subsection (b). Indeed, if the class action device were not available in this case, it is difficult to conceive how taxpayers might protect in federal courts the interests asserted here. Without the class action device, the aggregation of claims necessary to meet the jurisdictional amount requirement would be so difficult that the perpetrators of illegal transactions such as are alleged here would enjoy something akin to immunity in the federal courts.

This same consideration of access to federal relief, when coupled with our conclusion that the sole issues in the instant case are issues common to the class, leads us to conclude that part (3) of subsection (b) is also applicable here. The complaint discloses no assertion of rights or facts peculiar to the instant plaintiff. Rather, the right asserted, the taxpayers' interest in the honest disposition of public land, is an equitable right held in common by the taxpayers of the Sanitary District.

■ We also believe that plaintiff can provide the notice required by our finding above that the instant suit can be maintained under subsection (b) (3).[11] While other situations [12] might require more precise notice in order to meet due process requirements, the very nature of a taxpayer suit discloses that individual notice to each taxpayer would render the taxpayer suit device impotent. If individual notice were required in taxpayer actions, only the wealthy could

afford to bring taxpayer suits. To use the language of the rule, more than "reasonable effort" would be required to identify all identifiable members of the class. Where, as here, several hundred thousand taxpayers are represented, we believe that the best practicable notice would be by publication. Given the necessity for preserving the viability of the taxpayer action device, notice by publication would seem sufficient to satisfy due process requirements.

■ Defendant's final challenge to the court's jurisdiction charges that this action does not present a "case or controversy" within the jurisdictional grant of Article III of the Constitution. Defendant relies on Doremus v. Board of Education, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952), which held that the taxpayer-plaintiff had failed to allege ascertainable monetary harm resulting from the challenged activity—bible reading in public schools. The court therefore concluded that no justiciable case or controversy existed. Unlike the taxpayer-plaintiff in *Doremus* (who was unable to connect specific expenditures with the challenged activity), the instant plaintiff has directly challenged specific dispositions of municipal property and has identified each challenged disposition with great particularity. Since the plaintiff has here alleged specific deprivations of property rights recognized by Illinois law, we conclude that a justiciable case or controversy has been presented for our adjudication.

In summary, we observe that plaintiff has alleged facts which, if true, may entitle him and the other taxpayers of the

---

the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

11. "c(2) In any class action maintained under subdivision (b) (3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, wheth-

er favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel."

12. In Eisen v. Carlisle & Jacquelin, supra, the class consisted of hundreds of thousands of odd-lot stock purchasers. The class was represented by a single purchaser. The court concluded that the varied nature of the private interests asserted required individual notice in order to meet due process standards.

Sanitary District to relief. Since plaintiff's claims raise substantial federal questions and since the amount in controversy exceeds $10,000, we have jurisdiction over the action under 28 U.S.C. § 1331. Therefore, defendant's motion to dismiss for failure to state a claim and for lack of jurisdiction must be denied. An appropriate order will enter.