268 F.Supp. 701 (1967)
Margaret E. SNYDER, also known as Peg Snyder, Plaintiff,
v.
Charles HARRIS and Earl W. Kirchhoff, Defendants.
No. S 66 C 78.
United States District Court E. D. Missouri, Southeastern Division.
April 27, 1967.
Hyman G. Stein and Charles Alan Seigel, St. Louis, Mo., for plaintiff.
Morris A. Shenker, St. Louis, Mo., for defendants.

MEMORANDUM OPINION AND ORDER
HARPER, Chief Judge.
This matter is before the court on the joint motion of the defendants to dismiss the amended complaint. The motion has been submitted on the briefs of the parties and oral argument.
The plaintiff seeks to bring this action as a class action pursuant to Rule 23, Federal Rules of Civil Procedure, as amended July, 1966. The relevant part of the amended complaint alleges that *702 the plaintiff, Margaret E. Snyder, is a citizen of the State of Arizona, and the defendants, Charles Harris and Earl W. Kirchhoff, are citizens of the State of Missouri; that there is diversity of citizenship and the amount in controversy exceeds $10,000.00; that since prior to November 22, 1966, the plaintiff has been a shareholder of Missouri Fidelity/Union Trust Life Insurance Company (hereinafter referred to as Missouri Fidelity) and owns two thousand shares of said company; that the By-laws of Missouri Fidelity provide for a Board of Directors consisting of fifteen directors and that the defendants were at all times relevant to this action members of said board of directors; that at all times relevant to this action the market price of Missouri Fidelity was about $2.63 per share; that sometime prior to November 22, 1966, National Western Life Insurance Company (hereinafter referred to as National Western) submitted to the directors of Missouri Fidelity a proposal to purchase from them for $7.00 per share all of the shares of Missouri Fidelity owned by them, conditioned however, that all directors of Missouri Fidelity, except four, resign as directors and that five nominees of National Western be elected as directors of Missouri Fidelity, and that such nominees be designated and elected as a majority of the executive committee and of the investment committee of Missouri Fidelity; that on or about November 22, 1966, National Western, pursuant to its said offer, entered into an agreement with eight of the directors of Missouri Fidelity, including the defendants herein, to pay to them and to friends and relatives of theirs $7.00 per share for an aggregate of approximately 300,000 shares of Missouri Fidelity owned by them, and thereupon and in pursuance of such conduct said eight directors, including the defendants herein, did resign as directors of Missouri Fidelity, and nominees of National Western were designated, named and elected as directors of Missouri Fidelity and as a majority of the executive committee and of the investment committee of Missouri Fidelity; that the aforesaid conduct and acts of the said eight directors, including the defendants, were a breach of trust and a violation of their duties as directors of Missouri Fidelity, and National Western procured said resignations and therefore paid or has agreed to pay the said eight directors who resigned, including the defendants herein, and their friends and relatives, a premium of about $1,200,000.00; and that the aggregate amount paid by National Western for the said shares was approximately $1,200,000.00 in excess of the market value of said shares and was a premium paid by it to the said selling shareholders for the resignations of said directors who resigned and for the obtaining of control of the executive committee and investment committee of Missouri Fidelity.
The amended complaint prays for judgment in the amount of $1,200,000.00, said judgment to be entered in favor of the plaintiff and the other individual shareholders (allegedly over 4,000 in number) according to their respective share holdings.
The present motion alleges various grounds for dismissal of the amended complaint, including lack of jurisdictional amount. For reasons hereinafter set forth, this court need only consider the question of lack of jurisdictional amount.
The defendants contend that if the plaintiff has pleaded a class action, she has pleaded a "spurious" class action and that the jurisdictional amount in such an action may not be determined by aggregating the amounts which might be claimed by others in the class action. Further, the defendants contend that the plaintiff's individual claim can amount to no more than $8,740.00. The plaintiff, on the other hand, contends that since "spurious" class actions no longer exists under Rule 23, F.R.Civ.P., as amended July, 1966, and since a judgment in any class action is now binding upon the entire class, the claims of the entire class are in controversy and should, therefore, be aggregated in arriving at the jurisdictional amount.
*703 The law concerning the aggregation of claims in a class suit before the amendment in July, 1966, to Rule 23, F.R.Civ. P., is fairly stated in Moore's Federal Practice, § 23.13, p. 3480, to-wit:
"In the case of joinder of plaintiffs the matter of aggregation of claims is ruled by the doctrine of Pinel v. Pinel (240 U.S. 594, [36 S.Ct. 416], 60 L.Ed. 817). There the rule was laid down that if the demands of the plaintiffs are `separate and distinct', each must have a claim in the jurisdictional amount, while if they unite to enforce a joint or common interest aggregating is permissible. These principles apply with equal force in the class action, since the class action is but a procedural device to permit some to prosecute or defend an action without the necessity of all appearing as plaintiffs or defendants. Thus in the case of a true class action, if instead of bringing a class action the members of the class joined as plaintiffs, the jurisdictional amount would be determined by the joint or common claim; no one has a several claim. Unless the class suit were utilized all of the members of the class would have to join. Normally this is impracticable, and the class action device is employed; but the jurisdictional amount is determined in precisely the same manner, and aggregation is proper. In the hybrid and spurious class suit, on the other hand, the rights are several and there can be no aggregation, whether the parties all join or the class action is resorted to."
The so-called "spurious" class action under the old Rule 23 was where the character of the right sought to be enforced for or against the class was several, and there was a common question of law or fact affecting the several rights and a common relief was sought. (See old Rule 23(a) (3)) Any judgment in the spurious class action was binding solely on the named parties; it was in reality an invitation to join. By its very definition, the character of the rights sought to be enforced in a spurious class action were "separate and distinct", and, therefore, under the doctrine of Pinel v. Pinel, supra, such rights could not be aggregated to make up the jurisdictional amount.
Rule 23, as amended July, 1966, makes no provision for a spurious type of class action, and makes no reference to a "joint" or a "common" interest. The complaint alleges a breach of trust, and in paraphrasing the language of Rule 23(b) (1), F.R.Civ.P., there is apparently an attempt to bring this action under such rule. However, since the prayer seeks direct individual damages for the respective shareholders of Missouri Fidelity, this action is more analogous to those situations contemplated by Rule 23(b) (3), F.R.Civ.P. (See Notes of Advisory Committee on Rules following 28 U.S.C.A. Rule 23, as amended July, 1966.)
Rule 23(b) (3), F.R.Civ.P., as amended July, 1966, provides, in part, to-wit:
"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
"(1) * * *
"(2) * * *
"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."
*704 A judgment in a class action brought under Rule 23, as amended, is res judicata as to the whole class except as to those members of a (b) (3) type of class action who specifically request to be left out of the action.
Because a judgment in a class action is now binding upon the entire class, and because spurious class actions no longer exist under the amended Rule 23, does it necessarily follow that the doctrine with respect to jurisdictional amount of Pinel v. Pinel, supra, no longer applies to class actions? This court thinks not.
Pinel v. Pinel, supra, specifically states, 240 U.S. 594, 36 S.Ct. l. c. 417, 60 L. Ed. l. c. 818, in part, to-wit:
"The settled rule is that when two or more plaintiffs having separate and distinct demands unite in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount." (Cases cited.)
The Pinel doctrine applied with equal force to class actions brought under Rule 23 which was but a procedural device to allow several plaintiffs to unite in a single suit.
Rule 23, as amended, contains nothing to indicate that it has now become something more than a procedural device to permit several plaintiffs to unite in a single suit. The rule in no way purports to affect the jurisdiction of this court, nor do the Notes of the Advisory Committee on Rules indicate that the rule is to have such an effect. There is no reason why the Pinel doctrine should suddenly become obsolete with the passage of the amended Rule 23, unless the new rule somehow changes the character of a plaintiff's right. That it does not is clearly shown by the following excerpt from the Notes of the Advisory Committee on Rules (see p. 62 of notes following 28 U.S.C.A. rule 23, as amended July, 1966), to-wit:
"Subdivision (c) (2) makes special provision for class actions maintained under subdivision (b) (3). As noted in the discussion of the latter subdivision, the interests of the individuals in pursuing their own litigations may be so strong here as to warrant denial of a class action altogether. Even when a class action is maintained under subdivision (b) (3), this individual interest is respected. Thus the court is required to direct notice to the members of the class of the right of each member to be excluded from the class upon his request. A member who does not request exclusion may, if he wishes, enter an appearance in the action through his counsel; whether or not he does so, the judgment in the action will embrace him."
Furthermore, a construal of the amended Rule 23 in such a way as to confer jurisdiction on this court where in a similar situation before the amendment to the rule it would not have had jurisdiction, would constitute a direct violation of Rule 82, F.R.Civ.P., as amended, which states, in part:
"These rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein."
See also DeLorenzo v. Federal Deposit Insurance Corp., D.C., 259 F.Supp. 193, l. c. 195, note 5.
The sole question before this court, then, is whether or not the demands of the plaintiff are separate and distinct from other persons in the class. If they are, then under the Pinel doctrine the plaintiff may not aggregate such claims with those of others in the class.
The allegations of the plaintiff's complaint clearly indicate that her claims are separate and distinct. The complaint alleges that the plaintiff is the owner of 2,000 shares of stock of Missouri Fidelity; that the market price of said stock at the time of the matters complained of was *705 approximately $2.63 per share; and that the defendants received $7.00 per share for their stock. The prayer asks for damages in the amount of $1,200,000.00, to be divided among the individual shareholders in accordance with their respective share holdings. Thus, the plaintiff is alleging that she is entitled to $8,740.00 damages for her own stock.
For the foregoing reasons the court finds that the amount in controversy in the present action does not exceed $10,000.00, and this court, therefore, lacks jurisdiction over the controversy. The defendants' joint motion to dismiss is sustained, and said cause is dismissed without prejudice.