Irving M. LESCH, Stanley Bright and Paul J. Kern, Plaintiffs,

v.

CHICAGO & EASTERN ILLINOIS RAIL-ROAD COMPANY, an Indiana corporation, Defendant.

No. 66 C 176.

United States District Court
N. D. Illinois, E. D.

Feb. 15, 1968.

Meyer Goldberg and Leonard L. Levin, Chicago, Ill., for plaintiffs.

W. McNeil Kennedy, Frank F. Fowle, Herbert S. Wander, Paul E. Freehling, Pope, Ballard, Uriell, Kennedy, Shepard & Fowle, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

NAPOLI, District Judge.

Plaintiffs are former owners of Class A preferred stock of the defendant Chicago & Eastern Illinois Railroad (C & EI). They bring this action on their own behalf, and ask that this be declared a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and that they be permitted to represent all other owners and former owners of Class A stock, on and after March 15, 1965. The relief sought is a payment of $2 per share to every owner and former owner of Class A stock who exchanged or redeemed his stock, pursuant to an exchange offer made on March 15, 1965, or pursuant to a subsequent call for redemption, made on July 31, 1965. The basis of the action is for misrepresentation as to the exchange offer, and for breach of contract as to the redemption. No allegations of violation of federal securities laws having been made, jurisdiction is based solely on diversity of citizenship.

Briefly, the underlying facts are these. By its answer the C & EI admits that in computing its net income for the year

1959, it did not include the full $692,000 net income of its wholly owned subsidiary, the Chicago Heights Terminal Transfer Railroad. (CHTT). The C & EI included only the $300,000 actually paid to it as a dividend by the CHTT. Furthermore, in computing its 1959 net income, the C & EI took deductions for approximately $535,000 in 1959 real property taxes, most of which had been paid under protest. Through litigation in subsequent years, the C & EI has succeeded in recovering $215,487.62 of this amount. The refunds were credited as received in the current year's income for the year of receipt, rather than by restating the 1959 net income. As actually computed, 1959 net income was insufficient for declaration of a dividend to the Class A shareholders, and no dividend was declared or paid by the C & EI that year to its Class A shareholders.

On March 15, 1965, the C & EI made an exchange offer to its Class A shareholders, offering to exchange for each share of Class A stock tendered, common stock having a market value equal to par value ($40) of the Class A stock, plus accumulated earned and unpaid dividends, which the C & EI fixed at $6.00 per share. In computing the $6 per share figure, the C & EI did not consider that the 1959 dividend was earned and unpaid. As part of the offer, the C & EI submitted for stockholder consideration a Consolidated Balance Sheet of the Company and its wholly owned subsidiaries as of December 31, 1964, and a Consolidated Income Account and Statement of Consolidated Retained Income for the railroad and its wholly owned subsidiaries for the calendar years 1962, 1963, and 1964. Approximately one half of the 75,105 outstanding Class A shares were exchanged in response to the offer.

On July 31, 1965, the C & EI, pursuant to authority contained in the provisions of its Certificate of Incorporation, exercised its right to call all 39,712.25 remaining outstanding shares of Class A preferred for redemption, at a price of par plus cumulative accrued and unpaid dividends, computed by the railroad to amount to $7.17 per share at that time. The $7.17 figure was computed on the assumption that no 1959 dividend was earned. All three plaintiffs of record have apparently surrendered their shares of Class A stock for redemption, at a price of $47.17 per share.

On these facts, it is plaintiffs' contention that defendant's failure to account for the full earnings of its wholly owned subsidiary on a consolidated basis for the year 1959 was "in violation of accepted accounting principles and in violation of law." The same contention is made as to the railroad's failure to apply the refund on illegal real estate taxes and assessments for the year 1959. Plaintiffs thus contend that as to the exchange offer, the formula for computing past accrued earned and unpaid dividends should have recognized that the 1959 dividend was earned but unpaid; that the consolidated statements submitted with the exchange offer were somehow a representation that income is reported on a consolidated basis; and that consequently, due to the misrepresentations and improper accounting for 1959 earnings, those stockholders who exchanged their Class A shares for common shares, were deprived of an extra $2 per share. As to the redemption, plaintiffs contend that by refusing to properly recognize that a 1959 dividend was earned but unpaid, defendants redeemed the Class A stock for a price of $2 per share less than the price set by the Articles of Incorporation, par plus accrued and earned but unpaid dividends.

Both parties agree that there is no factual dispute. Cross-motions for summary judgment have been filed. The case has been fully briefed on the merits.

I. Class Action

Before reaching the merits, however, it will be necessary to consider certain preliminary procedural questions. First of all, although this purports to be a class action, neither party has asked that this court order, pursuant to Rule 23(c)(1), whether this action is properly so maintained. Nor have any steps been

taken, pursuant to Rule 23(c)(2), to direct notice to members of the class.

Plaintiffs ask that they be allowed to represent all former holders of Class A stock, on and after March 15, 1965. All plaintiffs of record refused the exchange offer of March 15, 1965, but were required by the call for redemption on July 31, 1965, to surrender their shares for cash. Thus, although no party of record is a member of the sub-class of former Class A shareholders who accepted the exchange offer, plaintiffs ask to represent both this group, and the group which surrendered their shares for redemption. Defendant objects to allowing these plaintiffs to represent that part of the class which exchanged their shares, pointing out that the interests of the two sub-classes may conflict.

■ It is apparent that each sub-class has an entirely different cause of action. The former shareholders who exchanged their shares for common stock on March 15, 1965, were under no compulsion to do so. They responded to an offer which they were free to reject. Consequently, their action, if it exists at all, is for misrepresentation, not for breach of the contract between the corporation and its preferred shareholders. The plaintiffs, on the other hand, and all other former Class A shareholders who surrendered their shares only after they were called for redemption by the railroad, under color of authority contained in the Articles of Incorporation, base their action on breach of the contract between the railroad and its Class A shareholders.

In short, the claims of the plaintiffs as representative parties are not typical of the claims of the entire class of former Class A shareholders, but are typical only of the claims of those former Class A shareholders whose shares were called for redemption. Accordingly, an order will be entered permitting these plaintiffs to represent only the former shareholders whose shares were called for redemption on July 31, 1965. With the class so defined, this court finds that the action is properly maintained as a class action.

## II. Jurisdiction

■■ The class action is merely a multiple joinder device, permitting the litigation, in one single action, of multiple claims involving similar or identical questions of law and fact, usually arising from the same set of operative facts. Its utility in a proper situation, where the court has jurisdiction of the parties and subject matter, cannot be gainsaid. Nevertheless, the determination of whether a class action is properly so maintained, must be made independently of the determination of whether the requisite $10,000 minimum jurisdictional amount is in controversy.[1]

■ Plaintiffs contend that their claims may be aggregated in determining whether the minimum $10,000 jurisdictional requirement is met. However, under the doctrine of Pinel v. Pinel, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817 (1916), if the demands of the plaintiffs are separate and distinct, each must have a claim in the jurisdictional amount, while if they unite to enforce a joint or common interest, aggregation is permissible. These principles apply as well to class actions. Thus in the so-called "true" class action, where the representative parties unite to enforce a joint or common interest, the aggregate value of the claims of the class is used in determining whether the requisite jurisdictional amount is in controversy. Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939); Grand Rapids Furniture Co. v. Grand Rapids Furniture Co., 127 F.2d 245 (7th Cir., 1942). On the other hand, in the so-called "hybrid" or "spurious" class actions, where several rights are being enforced, the minimum jurisdictional amount may not be satisfied by aggregating the claims of the entire class, or of the representative members. Rather, at least one of the representative parties must have a claim in excess of the minimum amount.

Knowles v. War Damage Corporation, 83 U.S.App.D.C. 388, 171 F.2d 15 (1948), cert. den. 336 U.S. 914, 69 S.Ct. 604, 93 L.Ed. 1077 (1949).

There is nothing in the new Rule 23, effective July 1, 1966, which changes these settled principles of federal jurisdiction.[2] Indeed, to so construe Rule 23 would be to violate Rule 82 which provides: "These rules shall not be construed to extend or limit the jurisdiction of the United States district courts * * *." See Alvarez v. Pan American Life Insurance Company, 375 F.2d 992 (5th Cir., 1967), where the court held that the revised Rule 23 governed a class action filed before the effective date of the amendment, and that aggregation of claims would not be permitted in a spurious class action in order to confer federal jurisdiction.[3]

██ In light of these principles, it will be necessary to determine whether the case at bar is a true class action. The test of whether an action is a true class action, is whether, absent the class action device, plaintiff would be permitted to maintain his action without joining other members of the class. Matlaw Corporation v. War Damage Corporation 164 F.2d 281 (7th Cir., 1947), cert. den. 333 U.S. 863, 68 S.Ct. 744, 92 L.Ed. 1142 (1948). It is evident that any one of the plaintiffs here could have maintained an action for breach of his Class A stock contract against the corporation, without joining all other Class A stockholders. Each Class A stockholder's right is separate and independent of each other Class A stockholder's right. Accordingly, this action is not a true class action, but merely a spurious class action, seeking enforcement of rights individual to each member of the class. Giesecke v. Denver Tramway Corporation, 81 F. Supp. 957 (D.C.1949), and Knapp v. Bankers Security Corporation, 17 F.R.D. 245 (D.C.1954), aff'd. 230 F.2d 717 (3rd Cir. 1956), have similarly held that class actions for preferred stock dividends are spurious class actions, and that individual claims cannot be aggregated in such class actions for purposes of determining whether the jurisdictional minimum amount is in controversy.

██ It is the view of this court that in a spurious class action, if one of the representative parties has a claim in excess of the jurisdictional minimum, then federal jurisdiction attaches, and if that party alone can adequately represent the entire class, then there is federal jurisdiction over the entire class action even where members of the class having smaller claims are originally named parties. In such cases, later intervention by parties having smaller claims, or citizenship identical to that of a party opposing the class, is proper. Stewart v. Dunham, 115 U.S. 61, 5 S.Ct. 1163, 29 L.Ed. 329 (1885). Similarly, a court may always in its discretion permit the dismissal of a suit as to parties whose names appearing on the record would oust it of jurisdiction, if sufficient representative parties remain of record. 3 Moore's Federal Practice ¶ 23.13 and cases cited at note 27. Accordingly, there is no logical reason for holding that merely because two members of the proposed class, whose claims are for less than the jurisdictional minimum, were named as original parties plaintiff, that federal jurisdiction is lost.

Plaintiffs Lesch and Bright have claims for less than $10,000 each. Yet

2. Rule 23 of the Federal Rules of Civil Procedure, as revised, is sometimes said to have obliterated the distinction between true, hybrid, and spurious class actions. This is true only where the question is, whether a class action is properly so maintained, or whether the judgment is binding upon all members of the class. In determining whether the minimum jurisdictional amount is in controversy, a District Court must treat any application for a class action as a case of multiple joinder of parties. In so far as "true", "hybrid", and "spurious" characterize the nature of the right being enforced, they remain as useful analytical terms even after the revision to Rule 23, where the question as to jurisdictional amount is raised.

3. contra: Booth v. General Dynamics Corporation, 264 F.Supp. 465 (N.D.Ill., 1967).

they would clearly have been permitted to intervene in this action if Kern alone had been the only original plaintiff, since it is the policy of the revised Rule 23 to encourage intervention by any interested member of the class. To require that plaintiffs drop Lesch and Bright as parties plaintiff, and then move for their intervention, lest federal jurisdiction be lost, is to worship procedure and form over substance.

Accordingly, upon being satisfied that plaintiff Kern has a claim in excess of $10,000, and that he alone can adequately represent the class as defined above, this court will hold that it has jurisdiction over the subject matter. A hearing will be necessary for this purpose, however, since there is an ambiguity between the complaint and answer as to how many shares Kern owned. Since $2 per share is in controversy, Kern will have to show that he owned more than 5,000 shares of the Class A stock of the defendant railroad on July 31, 1965, the date the shares were called for redemption. Both parties are given leave to submit affidavits and other evidentiary matter bearing on this question, before the hearing date. Additional testimony or other evidence will be received at that time if necessary.

Upon being satisfied that it has jurisdiction in accordance with the foregoing principles, this Court will direct that all members of the class, as defined above, be notified, in accordance with Rule 23 of the Federal Rules of Civil Procedure. Actual notice by letter seems feasible in this case. The parties are hereby notified that the Court is contemplating entry of the following order if it finds that it has jurisdiction:

> IT IS ORDERED that plaintiffs prepare a notice letter complying with Rule 23 of the Federal Rules of Civil Procedure, and send it to each former owner of Class A stock of the defendant railroad, as of July 31, 1965. Defendants are ordered to make their records and facilities for mailing available to plaintiffs. Expenses of postage, printing and stationery are to be borne by plaintiffs. Said notice letter shall notify each member of the class of his right to intervene through counsel on or before April 1, 1968, as well as his right to request exclusion from the class.

Counsel may present other suggestions for an appropriate order to the Court at the hearing. After the time for intervention has elapsed, if no new matters are presented to the court, the cross-motions for summary judgment will be ruled upon.

Appropriate pre-trial orders will enter today.