Frank E. BERMAN et al.

v.

NARRAGANSETT RACING ASSOCIATION, Inc.

Frank E. BERMAN et al.

v.

BURRILLVILLE RACING ASSOCIATION, Inc.

Civ. A. Nos. 3913, 3914.

United States District Court
D. Rhode Island.

Oct. 24, 1968.

Jeremiah J. Gorin, Providence, R. I., Frank E. Berman, Boston, Mass., F. Fleet Cowden, Sudbury, Mass., for plaintiffs.

Stephen F. Achille, Providence, R. I., for Narragansett Racing Ass'n.

William A. Curran, Providence, R. I., for Burrillville Racing Ass'n.

## OPINION

PETTINE, District Judge.

These are two purported class actions pursuant to Federal Rule of Civil Procedure 23 [1] instituted by the representative plaintiffs, Frank E. Berman, Rose Berman, and Muriel Winston, against the defendants, Narragansett Racing Assoc., Inc. and Burrillville Racing Assoc., Inc.[2] An accounting, damages, and injunctive relief are sought. Jurisdiction is alleged on the basis of 28 U.S.C. § 1332(a) (1).[3]

A detailed statement of the factual background of the case is indispensable to a proper understanding of the principles to be enunciated in this opinion.

## THE PARI-MUTUEL WAGERING SYSTEM IN R. I.

The pari-mutuel system of wagering in Rhode Island is permitted and controlled by the Rhode Island General Laws. R.I.G.L. §§ 41–1–1 to 41–4–13, as amended, 1956. That system operates on the premise of paying to the winning bettors on each race a certain percentage of the total money bet on that particular race. The total money bet on a particular race is called "the handle", and the percentage paid to the winning bettors, currently approximately 84%, is called "the win pool". The percentage not returnable to the bettors, currently 16%, is called "the commission" and is divided into two portions: The state of Rhode Island receives 8½%, and the "licensee" racetrack receives 7½%. Of the 7½% that it receives the licensee racetrack, by an alleged annual contractual agreement with the horseowners, pays 44.7% to the group of horseowners whose horses win purses.[4] It

---

1. Proposed Amendments to Rules of Civil Procedure for United States District Court, 39 F.R.D. 69 (1966).

2. Because there are no relevant legal differences between the two cases for purposes of this opinion, the opinion will be written as if there was only a single defendant, "the racetrack," or "the track."

3. 28 U.S.C. § 1332(a) (1) states (a) The district courts shall have original juris-

diction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interests and costs, and is between—

 (1) citizens of different states * * *.

4. The group of owners whose horses win purses is not limited to owners whose horses win, place, or show. It may also include owners whose horses finish fourth or fifth.

does not appear clearly in the pleadings or briefs filed in this case, nor did it appear clearly in the oral argument, by what means and in what portions the horseowners'. 44.7% of the track's share of the commission is distributed amongst the individual members of the group of pursewinners.[5] It is sufficient for purposes of this decision, however, to note that either the entire 44.7% or some portion thereof [6] is divided amongst and distributed to the individual members of the group of pursewinners in accordance with the discretion of the track.[7]

Tickets betting on a horse sharing in the win pool are divided into the money in the win pool by class, i. e., win, place, and show, to determine the amount of money the winning bettor receives on his bet. After the winning tickets are divided into the win pool by class, payments per ticket are broken "to the dime resulting from such wagering." R.I.G.L. §§ 41–4–3, 4, as amended 1956. This is done to facilitate handling the payment of winning tickets. Thus, a winning ticket which would have been worth $4.-43, had a precise division to the cent been carried out, actually pays $4.40 under the current statutorily authorized practice. The odd cents of the win pool for each race are called "breakage" and are divided between the state of Rhode Island and the racetrack on an equal basis. R.I.G.L. §§ 41–4–3(b), 4(b), as amended, 1956.

## THE PLAINTIFFS & THEIR CLAIM

The plaintiffs purport to represent all licensed owners of registered thoroughbred horses who won purses [8] at the racetrack between 1934 and the present or who will win purses in the future. The plaintiffs claim that during the relevant period the 50% portion of the breakage paid over to the racetrack should have been and should be subject to distribution in part to the horseowners by virtue of a consensual agreement between them and the track. Specifically, the plaintiffs claim that 44.7% of the racetrack's share of the breakage has been, is, and will be withheld from them in breach of the alleged contractual

---

5. The court infers two possible plans of distribution. Under the first, the entire 44.7% would have been distributed in accordance with the discretion of the racetrack and would have been called "bonus money" because paid in addition to the purses put up by the racetrack. If this was, in fact, the plan of distribution, then the racetrack's operational costs, *including purses*, and its profits were derived from the remaining 55.3%.

Under the second plan, the 44.7% would have been distributed as the purse-winnings and not in addition to the purse-winnings. Under this plan the actual purses to be paid in each race would have been agreed upon during the racing season in such a fashion as to exhaust approximately an estimated 44.7% of the track's share of the commission for that season. If at the end of the season the actual purses paid would not have exhausted the then certain 44.7% of the track's share of the commission, the surplus money would have been distributed amongst the pursewinners in accordance with the discretion of the racetrack and would have been called "bonus money"

because added to the already paid purses. If this was, in fact, the plan of distribution the racetrack's operational costs, *not including purses*, and its profits were derived from the remaining 55.3%.

6. Under either plan of distribution this money would be called "bonus money." See note 5, Supra.

7. It could be supposed that the track's discretion is unbridled in such circumstances. But because these payments were owing under an alleged contractual arrangement, it should, perhaps more probably, be supposed that the distribution was made with some rhyme or reason. The fact that it would have been in the interest of contractual tranquility for the track to have distributed the bonus money in some even-handed fashion strengthens that supposition. (In any case, it is not dispositive of this case, as the court understands it, how the bonus money was distributed—whether willy-nilly or by formula. See note 11 and accompanying text, infra.)

8. See note 4, Supra.

agreement.[9] However, as in the case of the distribution of "bonus money," [10] the means by which and the portions in which the 44.7% is to be distributed among the individual members of the group of pursewinners is discretionary.[11] The plaintiffs ask the court for an accounting by which the gross quantity of money allegedly owing to the class will be ascertained and distributed amongst the members of the class in accordance with some rational formula devised by the court.[12] The plaintiffs further request injunctive relief against the retention of money which will come into the control of the racetrack and will then allegedly be owing to the plaintiffs.

## THE RACETRACK'S DEFENSES

The defendant moves for dismissal on four separate grounds: (1) the complaint fails to state a claim upon which relief can be granted; (2) the plaintiffs failed to join an indispensable party under Fed.Rule Civ.P. 19; (3) the plaintiffs have not stated a proper class action under Fed.R.Civ.P. 23; (4) the court lacks jurisdiction because the matter in controversy does not exceed $10,000 within the meaning of 28 U.S.C. § 1332(a) (1).

## JURISDICTION

The plaintiffs' complaint alleges a matter in controversy far in excess of $10,000.[13] However, the defendant's answer attacks the premise upon which the plaintiffs' jurisdictional assertion rests. Specifically, the defendant answers that aggregation of claims under Rule 23 is impermissible in this case, and that on the basis of the plaintiffs' complaint there is absolutely no showing of any individual claim in excess of $10,000.[14] The plaintiffs, confronted with this attack, argue that (1) aggregation is not only permissible but highly desirable under new Rule 23; (2) even if aggregation is impermissible, it cannot be shown "to a legal certainty" that the individual plaintiffs will not recover amounts individually in excess of $10,000, and hence the plaintiffs' allegation must be deemed controlling.[15]

## AGGREGATION

The initial inquiry is whether the claims of individual class members can be aggregated in order to exceed the minimum requisite jurisdictional amount of $10,000 set out in 28 U.S.C. § 1332 (a) (1). Since the very inception of the use of permissive and necessary joinder devices in the Federal Courts, the question of aggregation has been before the courts. Under the old equitable class action Rule 38, Nolen v. Reichman, 225 F. 812, 816 (W.D.Tenn.1915); Eberhard v. Northwestern Mutual Life Ins. Co., 241 F. 353 (6th Cir. 1917), the old Rule 23, e. g., Knowles v. War Damage

9. In Civil Action No. 3913 the specific amount sought is $3,690,580.07. In Civil Action No. 3914 the specific amount sought is $4,996,053.98.

10. See notes 5 and 6, Supra.

11. See note 7, supra. In addition, because a court is now involved in the distribution of this 44.7%, it *must* be supposed that the distribution, though discretionary, would transcend whimsy.

12. Because of the court's disposition of this case, it is inappropriate to discuss the various possible formulae which might have been applied. See, however, note 11, supra.

13. See note 9, supra.

14. The defendants attach affidavits to their answers in which they seek to show that the plaintiffs could not possibly assert claims in excess of $10,000. While the court neither approves nor disapproves the application of the defendants' ratio formula to the facts of this case, see deposition of Max White at pp. 41–46, it does think that the defendants' answers and affidavits do suffice to bring into question the plaintiffs' allegation of jurisdictional amount.

15. The plaintiffs did not plead individual jurisdictional claims. The court believes, however, that the defendants' answers and affidavits, see note 14 supra, together with certain statements made on oral argument, permit the court to infer the argument as to individual jurisdictional claims set out in the above text.

Corp., 83 U.S.App.D.C. 388, 171 F.2d 15 (1948), and new Rule 23, e. g., Alvarez v. Pan American Life Ins. Co., 375 F.2d 992 (5th Cir. 1967), the question of aggregation has been considered. The most succinct expression of the principle which has controlled the issue of aggregation is the Supreme Court's statement in Pinel v. Pinel, 240 U.S. 594 at 596, 36 S.Ct. 416 at 417, 60 L.Ed. 817 (1916):

> The settled rule is that when two or more plaintiffs having separate and distinct demands unite in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right in which they have a common and individual interest, it is enough if their interests collectively equal the jurisdictional amount.

The plaintiffs in this case have approached the *Pinel* principle with alternative arguments. First, they assert that they are within the ambit of the latter part of the principle and hence should be allowed to aggregate.[16] Second, they claim that new Rule 23's *res judicata* effect so modifies *Pinel* as to permit aggregation.

■ The plaintiffs' position with respect to their first argument is that they have united to enforce their right to 44.7% of the breakage, in which they have an undivided interest. The argument falls down in two respects. First, the plaintiffs assert a right which is not a common right; rather, all the plaintiffs are actually asserting individual rights based on an alleged contract between them and the racetrack. More simply stated, if a single horseowner who won purses at the racetrack during the relevant period brought an individual contract action, his case could be decided without having to join all the other winning horseowners. Secondly, the fund sought is not an indivisible amount, it is only a currently undivided amount which can and must be divided eventually in order to pay damages. The plaintiffs actually attempt, with respect to this portion of their argument, to create the illusion of indivisibility as to the fund sought and of interlocking causes of action as to those seeking it. The court rejects that illusion and with it the plaintiffs' first alternative argument.[17]

■ The plaintiffs' second alternative argument is that the amendment to Rule 23—by which all persons who are within the class are bound for *res judicata* purposes unless they affirmatively opt out—modifies the *Pinel* principle as applied to class suits, so as to make aggregation permissible. The argument is that the purposes for which Rule 23 was amended would be best served by permitting aggregation, and that, of the

16. The plaintiffs stated on oral argument that the instant class action would have been a "true" class action under old Rule 23. Either explicitly or implicitly all of the old Rule 23 decisions allowing aggregation deemed "true" class actions to come within the language of the latter part of the *Pinel* principle. E.g., Knowles v. War Damage Corp., 83 U.S.App.D.C. 388, 171 F.2d 15 (1948). Hence, the court treats the plaintiffs' attempt to come within the "true" category as an attempt to come within the permissive part of the *Pinel* construction of 28 U. S.C. § 1332(a) (1). See note 17, infra.

17. See note 16, supra. There may be wonderment as to why the court has treated this aspect of the plaintiffs' argument exclusively under the *Pinel* principle and not under the "true"–"spurious" class action distinction orally argued by plaintiffs' counsel and so often made by the courts under the old Rule 23 for aggregation purposes. Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39 at p. 48 & n. 13 (8th Cir.Jud.Conf.1967). It is the court's purpose in treating this question as it does to avoid resurrecting the "true"–"spurious" battle with its attendant classification problems. If there is to be any battle it should be not whether the class claim would have been "true" or "spurious" under old Rule 23, but rather whether the particular claim under the new Rule 23 falls within the permissive or prohibitive policies of *Pinel* with respect to aggregation under 28 U.S.C. § 1332 (a) (1).

five published precedents [18] which consider the question of aggregation under new Rule 23, Booth v. General Dynamics Corp., 264 F.Supp. 465 (N.D.Ill.1967), Gas Service Co. v. Coburn, 389 F.2d 831 (10th Cir. 1968), and Collins v. Bolton, 287 F.Supp. 393 (N.D.Ill.1968) should control as against Alvarez v. Pan American Life Ins. Co., 375 F.2d 992 (5th Cir. 1967) and Snyder v. Harris, 390 F.2d 204 (8th Cir. 1967) affirming 268 F. Supp. 701 (E.D.Mo.1967).[19] There is little doubt that the utilitarian purposes of new Rule 23 would be effectuated by a jurisdictional rule allowing aggregation in all maintainable class suits. Virtually all the learned commentators have taken that position, Cohn, *The New Federal Rules of Civil Procedure*, 54 Geo.L.J. 1204, 1221, (1966), Frankel, *Some Preliminary Observations Concerning Civil Rule 23*, 43 F.R.D. 39 at pp. 48–53 (8th Cir.Jud.Conf.1967), VanDercreek, *the "Is" and "Ought" of Class Actions under Federal Rule 23*, 48 Iowa L.Rev. 273, 291–295, *Comment: Adequate Representation, Notice and the New Class Action Rule: Effectuating Remedies Provided by the Securities Laws*, 116 U.Pa.Law Rev. 889, 892 nn. 26 & 27 (1968); see also, 2 Barron & Holtzoff § 569 (Supp.1967 at 106, Wright ed.) 3A Moore ¶ 23.13, p. 3477 ff, and with good reason, for a rule permitting aggregation would foreclose the piecemeal litigation of identical claims which has the undesirable possible consequence of conflicting substantive decisions in cases with identical fact patterns. It is instructive, however, that the readiest answer to the problem has

been to amend 28 U.S.C. § 1332(a) (1) and not to make law which clashes with that section as presently written and construed.[20] See, e. g. VanDercreek, 48 Iowa 273 at 291.

Even conceeding the plaintiffs' social utility argument, there are insuperable barriers to aggregation. As is made clear by both the *Pan American* and *Snyder* cases, Rule 82 of the Federal Rules of Civil Procedure is the foremost barrier. That Rule, which is supposed to be nothing more than a restatement of an absolutely imperative construction of the Rules Enabling Act, 28 U.S.C. § 2072, see Sibbach v. Wilson & Co., Inc., 312 U.S. 1, 655, 61 S.Ct. 422, 85 L.Ed. 479 (1941); see also, 7 Moore ¶ 82.02[1] at pp. 4601–4602; see generally H. Hart & H. Wechsler, The Federal Courts and The Federal System 577–597 (Foundation Press, 1953), states, in pertinent part:

> These rules shall not be construed to extend or limit the jurisdiction of the United States District Courts or the venue of actions therein.

It is difficult to see how, if the plaintiffs' argument is accepted, a violation of this rule can be avoided.

Moreover, purely as a matter of construction, and wholly apart from Rule 82, it is stretching, indeed, to read Rule 23, which says nothing whatsoever about jurisdiction as a gloss upon 28 U.S.C. § 1332(a) (1) of sufficient strength to change over fifty years, Pinel v. Pinel, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817 (1916), of developed jurisdictional doctrine. As the District Court in Snyder

---

18. The court does not treat Judge Tenney's footnote dicta in DeLorenzo v. Federal Deposit Ins. Corp., 259 F.Supp. 193 at 195 n. 5 (S.D.N.Y.1966) as precedent.

19. The split between the Tenth Circuit, on one hand, and the Fifth and Eighth Circuits, on the other, and the question of whether the *Pinel* construction of 28 U. S.C. § 1332(a) (1) should be modified in the context of new Rule 23 make cases of this sort ideal for certiorari to the United States Supreme Court.

20. While it is probably little consolation to the plaintiffs in this action, it is interesting to note that there are no minimum requisite jurisdictional amounts in suits involving the two areas of substantive law in which new Rule 23's procedural purposes will most readily be effectuated, namely, securities enforcement, 15 U.S.C. § 78aa, and private treble damages suits under the antitrust laws. 15 U.S.C. § 15, 28 U.S.C. § 1337.

v. Harris, 268 F.Supp. 701 (E.D.Mo. 1967) stated at p. 704:

> Rule 23, as amended, contains nothing to indicate that it has now become something more than a procedural device to permit several plaintiffs to unite in a single suit. The rule in no way purports to affect the jurisdiction of this court, nor do the Notes of the Advisory Committee on Rules indicate that the rule is to have such an effect. There is no reason why the Pinel doctrine should suddenly become obsolete with the passage of the amended Rule 23, unless the new rule somehow changes the character of a plaintiff's right.

The plaintiffs' reliance on Booth v. General Dynamics Corp., 264 F.Supp. 465 (N.D.Ill.1967) is misplaced. *Booth* sets out facts which the court states at p. 472 show the plaintiff taxpayers' claim to be "common", or, rephrasing, "undivided" within the meaning of *Pinel*. Hence, aggregation can be said to be permissible in *Booth* because *Pinel* is satisfied and not because of the effect of the amendment to Rule 23.[21] The plaintiffs' reliance on Gas Service Co. v. Coburn, 389 F.2d 831 (10th Cir. 1968) and Collins v. Bolton, 287 F.Supp. 393 (N.D.Ill.1968)[22]

is well placed. The court makes no attempt to distinguish those cases, but rather meets them head-on and finds their rationales unacceptable.

As to the plaintiffs' argument on aggregation the court determines that aggregation is not permissible under new Rule 23 unless the *Pinel* principle is satisfied.

## THE INDIVIDUAL PLAINTIFFS & THE LEGAL CERTAINTY RULE

 The plaintiffs' complaint alleged a matter in controversy in excess of $10,000.[23] The defendants' answer attacked the plaintiffs' assumption as to aggregation, and then on the basis of a ratio formula, which it alleged to be most favorable to the plaintiffs, concluded that it was mathematically impossible for any of the individual plaintiffs to assert a matter in controversy in excess of $10,000.[24] The plaintiffs have, in the face of the defendant's answer and supporting affidavits, advanced the theory [25] that, because the breakage fund has not yet been divided and distributed, and because the court must determine the distribution theory, it does not appear

---

21. *Booth* also rests on the proposition that the vindication of a federal right properly belongs in the federal courts, and that, should aggregation be prohibited "* * * the perpetrators of illegal transactions such as are alleged here would enjoy something akin to immunity in the federal courts." 264 F.Supp. 465 at 472. See Collins v. Bolton, 287 F.Supp. 393 (N.D.Ill.1968). Admittedly, *Booth* and *Collins* are federal question cases and could, as such, be distinguished from the instant case which is a diversity case in which the substantive right sought to be protected is founded on state law and can, in the event of failure of requisite jurisdictional amount, be brought to the state courts for vindication. See H. Hart & H. Wechsler, The Federal Courts and The Federal System 999 (Foundation Press, 1953). Yet, the consistent parallel development of §§ 1331 and 1332 of the Judicial Code would be destroyed by such

a distinction. Where the Congress has created equal access to federal courts, it would be improper for those courts to so construe the jurisdictional statutes as to destroy that equal access. The court, therefore, declines to utilize a distinction which operates so as to permit aggregation under 28 U.S.C. § 1331 and prohibit it under 28 U.S.C. § 1332. The court declines to do so, moreover, in full realization that *Pinel* was only a § 1332 construction.

22. The plaintiffs did not argue either of these cases. The court assumes that had the cases been available to the plaintiffs they would have relied upon them.

23. See note 9, supra.

24. See note 14, supra.

25. See note 15, supra, and accompanying text.

"to a legal certainty" [26] that they cannot plead damages in excess of $10,000. While it is true that the distribution formula has not been determined and applied, this court thinks that the plaintiffs misconceive the import of the legal certainty rule. That rule may protect well-pleaded jurisdictional allegations where it is uncertain which of two or more conflicting theories of law will be applied, see, Hogg v. Burkhart Eng. Assoc., Inc., 171 F.Supp. 36, 37 (D.Mass. 1959), or where it is uncertain that the plaintiff can, in fact, prove what he has alleged but the allegation is in good faith. See Food Fair Stores, Inc. v. Food Fair, Inc., 177 F.2d 177 (1st Cir. 1949). That rule does not, however, shield a plaintiff, whose allegation has been attacked, from specifying under what theory and by what means the jurisdictional amount is to be met. See 2A Moore ¶ 8.11 at pp. 1670–71 & nn. 18 to 20. In the instant case, there has been no allegation whatsoever as to how the individual plaintiffs can show individual claims exceeding $10,000. Because the defendants have so seriously questioned the plausibility of the plaintiffs' claimed satisfaction of the amount requirement of 28 U.S.C. § 1332(a) (1) it is the plaintiffs' obligation to specify exactly how they can recover more than $10,000 individually. Because they have failed to do so, the complaint is dismissed as to the plaintiffs individually.

Because of the disposition of this case on the jurisdictional questions, the court declines to pass on the defendants' additional motions.

The case is hereby dismissed.

---

26. Professor Moore states the legal certainty rules as follows:

> The jurisdictional amount may be easily pleaded. * * *
>> For Example,
>> "The matter in controversy exceeds, exclusive of interests and costs, the sum of ten thousand dollars."
> This constitutes good pleading of this jurisdictional fact, unless * * * it can be said that to a legal certainty lack

of jurisdiction appears on the face of the complaint, taken as a whole.

2A Moore ¶ 8.11 at pp. 1668–69. See KVOS, Inc. v. Assoc. Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1936); St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Food Fair Stores, Inc. v. Food Fair, Inc., 177 F.2d 177 (1st Cir. 1949).