St. John DIXON, Bernard Lee, Marzette Watts, Edward English Jones, Joseph Peterson, Elroy Embry, Plaintiffs,

v.

ALABAMA STATE BOARD OF EDUCATION, Governor John Patterson, Ex-Officio Chairman of Alabama State Board of Education, Montgomery, Alabama, Robert R. Locklin, Mobile, Alabama, J. T. Albritton, Andalusia, Alabama, J. P. Faulk, Jr., Samson, Alabama, Harry M. Ayers, Anniston, Alabama, J. J. Benford, Albertville, Alabama, E. W. Skidmore, Tuscaloosa, Alabama, W. C. Davis, Fayette, Alabama, Cecil Word, Scottsboro, Alabama, Chester Austin, Birmingham, Alabama, as Members of the Alabama State Board of Education, Alabama State College, H. Councill Trenholm, President of Alabama State College, Montgomery, Alabama, Defendants.

Civ. A. No. 1634-N.

United States District Court
M. D. Alabama, N. D.

Aug. 26, 1960.

Supp. 213, 215; United States v. Cless, D.C., 150 F.Supp. 687, 692, affirmed 3 Cir., 254 F.2d 590.

946

---

Fred Gray, Atty., Montgomery, Ala., for plaintiffs.

MacDonald Gallion, Atty. Gen. of Alabama, N. S. Hare and Gordon Madison, Asst. Attys. Gen., Robert P. Bradley, Legal Adviser to the Governor, Montgomery, Ala., for defendants.

JOHNSON, District Judge.

This case is now submitted upon the issues made up by the pleadings, the evidence taken orally before the Court, the several·exhibits introduced and admitted,

and the briefs of the parties. This Court upon this submission now proceeds in this memorandum opinion, as authorized by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C., to make the appropriate findings of fact and conclusions of law.

This action is brought by six Negroes who were formerly students at the Alabama State College, Montgomery, Alabama, seeking a preliminary and permanent injunction to restrain the Alabama State Board of Education, the individual members of that Board, including the Governor as ex-officio chairman, the Alabama State College, and H. Councill Trenholm, as president of the Alabama State College, their agents, representatives, employees, assigns, and successors, from obstructing, hindering, preventing, and otherwise interfering with the plaintiffs' right to attend the Alabama State College in Montgomery, Alabama, as students. Plaintiffs invoke the jurisdiction of this Court under Title 28, §§ 1331 and 1343 of the United States Code. Generally, the plaintiffs' complaint avers that they were students in good standing at the Alabama State College and remained so until they entered a publicly owned lunchroom in the Montgomery County Courthouse on or about February 25, 1960, after which and because of which the defendant State Board of Education expelled each of them from the college. The plaintiffs aver that the defendants' action in expelling them was taken without regard to any valid rule or regulation concerning student conduct and was nothing more than a retaliation against, punishment against, and intimidation toward them for having lawfully sought service in a publicly owned lunchroom, which service they had a legal right to seek. Plaintiffs aver they were summarily expelled without notice or opportunity to defend against the charges;

that said action by the State Board of Education was arbitrary and in violation of their constitutional rights.

On the 25th day of February, 1960, the six plaintiffs in this case were students in good standing at the Alabama State College for Negroes in Montgomery, Alabama. This college is a state owned and operated institution of higher learning for prospective Negro school teachers; the college is owned by the State of Alabama, and maintained and operated with state funds. The State Board of Education is authorized to control and manage this and several other teacher-college institutions.[1] The State Board of Education has the authority, upon the recommendation of the State Superintendent of Education, to make the rules and regulations for the government of the school.[2] On this date, approximately twenty-nine Negro students, including these six plaintiffs, according to a prearranged plan, entered as a group a publicly owned lunch grill located in the basement of the county courthouse in Montgomery, Alabama, and asked to be served. Service was refused; the lunchroom was closed; the Negroes refused to leave; police authorities were summoned; and the Negroes were ordered outside where they remained in the corridor of the courthouse for approximately one hour. On the same date, John Patterson, as Governor of the State of Alabama and as chairman of the State Board of Education, conferred with Dr. Trenholm, a Negro educator and president of the Alabama State College, concerning this activity on the part of some of the students. Dr. Trenholm was advised by the Governor that the incident should be investigated, and that if he were in the president's position he would consider expulsion and/or other appropriate disciplinary action. On February 26, 1960, several hundred Negro students from the

1. Section 438, Title 52, 1940 Code of Alabama, as amended:

"§ 438. *Control.*—The state board of education shall have the control and management of the several teachers' colleges of the state, for white teachers, located

at Florence, Jacksonville, Livingston, Troy, and of the Alabama State College for Negroes located at Montgomery."

2. Section 439, Title 52, 1940 Code of Alabama.

Alabama State College, including several if not all of these plaintiffs, staged a mass attendance at a trial being held in the Montgomery County Courthouse, involving the perjury prosecution of a fellow student. After the trial these students filed two by two from the courthouse and marched through the city approximately two miles back to the college. On February 27, 1960, several hundred Negro students from this school, including several if not all of the plaintiffs in this case, staged mass demonstrations in Montgomery and Tuskegee, Alabama. On this same date, Dr. Trenholm advised all of the student body that these demonstrations and meetings were disrupting the orderly conduct of the business at the college and were affecting the work of the other students, as well as the work of the participating students. Dr. Trenholm personally warned plaintiffs Bernard Lee, Joseph Peterson and Elroy Embry, to cease these disruptive demonstrations immediately, and advised the members of the student body at the Alabama State College to behave themselves and return to their classes. On this same date, Bernard Lee filed a petition with the Governor of the State of Alabama protesting certain statements attributed to the Governor by the press.[3]

On or about March 1, 1960, approximately six hundred students of the Alabama State College engaged in hymn singing and speech making on the steps of the State Capitol. Plaintiff Bernard Lee addressed students at this demonstration, and the demonstration was attended by several if not all of the plaintiffs. Plaintiff Bernard Lee at this time called on the students to strike and boycott the college if any students were expelled because of these demonstrations.

Investigations into this conduct were made by Dr. Trenholm, as president of the Alabama State College, the Director of Public Safety for the State of Alabama under directions of the Governor, and by the investigative staff of the Attorney General for the State of Alabama.

On or about March 2, 1960, the State Board of Education met and received reports from the Governor of the State of Alabama, which reports embodied the investigations that had been made and which reports identified these six plaintiffs, together with several others, as the "ring leaders" for the group of students that had been participating in the above-recited activities. During this

3. "Students Petition the Governor
"To the Honorable Governor John Patterson
"We have taken cognizance of your mandate to President H. Council Trenholm of Alabama State College to dismiss from the School those students who participated in the sitdown strike at the County Court House snack-bar, Thursday, February 25, 1960.
"We, a united group of students of said college, humbly request that you reconsider your order to President Trenholm. This decision is out of tune with the spirit of true Americanism. The snack-bar at the Court House is a symbol of injustice to a part of the citizens of Montgomery. It is a flagrant contridiction of the Christian and Democratic ideals of our nation.
"We went to the snack-bar not as hoodlums, but in the same manner and spirit in which other college and university students have done in other parts of the country. Our purpose was to express our resentment of a scheme that fails to recognize its responsibility to decent and orderly persons of all creeds, colors or nationalities. Honorable Sir, we did not violate any laws. We did not disturb the peace. We did not disobey the order of the law enforcement officers. Our behavior was in line with what we have been taught. We know you recognize the facts of history in the area of necessary social changes. We grow because of the freedom of individual and group expression in the forms of petition and protest."
* * * * *
"We have no desire for a prolonged and bitter struggle. But we shall not yield our rights and student-sestiny without an extreme effort to retain them. The way we take, we do not know, but our way shall be directed by moral and spiritual designs. Our cause is just. We are asking that you study it with an open mind and give President Trenholm the authority to settle this issue with us.
"We are reasonable and considerate. We may be crushed, but we shall not bow to tyranny."

meeting, Dr. Trenholm, in his capacity as president of the college, reported to the assembled members of the State Board of Education that the action of these students in demonstrating on the college campus and in certain downtown areas was having a disruptive influence on the work of the other students at the college and upon the orderly operation of the college in general. Dr. Trenholm further reported to the Board that, in his opinion, he as president of the college could not control future disruptions and demonstrations. There were twenty-nine of the Negro students identified as the core of the organization that was responsible for these demonstrations. This group of twenty-nine included these six plaintiffs. After hearing these reports and recommendations and upon the recommendation of the Governor as chairman of the Board, the Board voted unanimously, expelling nine students, including these six plaintiffs, and placing twenty students on probation. This action was taken by Dr. Trenholm as president of the college, acting pursuant to the instructions of the State Board of Education. Each of these plaintiffs, together with the other students expelled, was officially notified of his expulsion on March 4th or 5th, 1960.[4] No formal charges were placed against these students and no hearing was granted any of them prior to their expulsion. On or about March 3, 1960, approximately two thousand Negro students staged a meeting at a church near the college campus. These plaintiffs, or at least a majority of them, were leaders in this demonstration. At this time the State School Board and the college administration were criticized and denounced.[5]

4. Letter from Alabama State College, Montgomery, Alabama, dated March 4, 1960, signed by H. Councill Trenholm, President:

"Dear Sir:

"This communication is the official notification of your expulsion from Alabama State College as of the end of the 1960 Winter Quarter.

"As reported through the various news media, The State Board of Education considered this problem of Alabama State College at its meeting on this past Wednesday afternoon. You were one of the students involved in this expulsion-directive by the State Board of Education. I was directed to proceed accordingly.

"On Friday of last week, I had made the recommendation that any subsequently-confirmed action would not be effective until the close of this 1960 Winter Quarter so that each student could thus have the opportunity to take this quarter's examinations and to qualify for as much OH-Pt credit as possible for the 1960 Winter Quarter.

"The State Board of Education, which is made responsible for the supervision of the six higher institutions at Montgomery, Normal, Florence, Jacksonville, Livingston, and Troy (each of the other three institutions at Tuscaloosa, Auburn and Montevallo having separate boards) includes the following in its regulations (as carried on page 32 of The 1958–59 Registration-Announcement of Alabama State College)

"'Pupils may be expelled from any of the Colleges:

"'a. For willful disobedience to the rules and regulations established for the conduct of the schools.

"'b. For willful and continued neglect of studies and continued failure to maintain the standards of efficiency required by the rules and regulations.

"'c. For Conduct Prejudicial to the School and for Conduct Unbecoming a Student or Future Teacher in Schools of Alabama, for Insubordination and Insurrection, or for Inciting Other Pupils to Like Conduct.

"'d. For any conduct involving moral turpitude.'"

5. The action of the Board is accurately reflected in plaintiffs' Exhibit 3, which reports the recommendation made to the Board by the Governor:

"After a full investigation of the demonstrations carried on by the students of the Alabama State College for Negroes and after careful consideration of the evidence obtained as a result of the investigation, I recommend that the following action be taken:

"1. That the following students be expelled:

Bernard Lee, Norfolk, Virginia

St. John Dixon, National City, California

Edward E. Jones, Pittsburg, Pennsylvania

Leon Rice, Chicago, Illinois

The law is now too well settled and the authorities are now too numerous for this Court to spend any considerable time on the various defenses herein raised by these defendants challenging the jurisdiction of this Court to hear and decide this type controversy. It suffices to say that jurisdiction is clearly vested by Title 28 U.S.C., §§ 1331 and 1343(3).[6] The various objections raised by these defendants as to the insufficiency of process and that this action is prohibited by the Eleventh Amendment to the Constitution of the United States are frivolous and merit no discussion. See this Court's opinion and the authorities cited therein in In re Wallace, D.C., 170 F. Supp. 63.

The only real question in this case is whether these plaintiffs were accorded "due process" within the meaning of the Constitution of the United States in their expulsion from the Alabama State College by the Alabama State Board of Education.

The right to attend a public college or university is not in and of itself a constitutional right. Waugh v. Board of Trustees, etc., 237 U.S. 589, 35 S.Ct. 720, 59 L.Ed. 1131; Hamilton et al. v. Regents of the University of California et al., 293 U.S. 245, 55 S.Ct. 197, 79 L.Ed. 343. The right to attend and matriculate in a public college or university is conditioned upon an individual student's compliance with the rules and regulations of the institution. The governing board, which in this instance is the State Board of Education, has the authority to establish reasonable rules and regulations for the government of the institution that is committed to its care. The regulations governing students at the Alabama State College for Negroes, which were enacted by the State Board of Education and published in the college catalogue and distributed to all

---

Howard Shipman, New York, New York

Elroy Emory, Ragland, Alabama

James McFadden, Prichard, Alabama

Joseph Peterson, Newcastle, Alabama

Marzette Watts, Montgomery, Alabama

"2. That the following students be placed on probation and allowed to remain in school pending good behavior:

"Henry Allen, Seale, Alabama; Richard Ball, Fairfield, Alabama; Willis C. Battle, Phenix City, Ala.; Cornelius Benson, Birmingham, Alabama; Samuel Bouie, Anniston, Alabama; Floyd Coleman, Sawyerville, Alabama; Henry Crawford, Montgomery, Alabama; James Earl Davis, Prichard, Alabama; Thomas C. Ervin, Heflin, Alabama; Arthur Lee Foster, Montgomery, Ala.; Isham Harris, Troy, Ala.; Jonathan Hicks, Chatom, Ala., Trenholm Hope, Selma, Alabama; Jerry Leon Johnson, Collinsville, Alabama; Andrew William Jones, Birmingham, Ala.; Eddie Lee McSwain, Eufaula, Alabama; Theophilus Moody, Camden, Alabama; Joe Louis Reed, Evergreen, Ala.; William Renfroe, Roba, Alabama; Robert Lee Woods, Heiberger, Alabama.

"3. That all other members of the student body be advised that they will be expected to behave themselves and obey the law and that any future conduct on their part which is in violation of the law or calculated to incite riots and disorders will result in their immediate dismissal from the school.

"/s/ John Patterson"

6. "§ 1331. Federal question * * *

"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

"(b) Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff is finally adjudged to be entitled to recover less than the sum or value of $10,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interests and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff."

"§ 1343. Civil rights

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

* * * * *

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the

students prior to their enrollment, read, in part, as follows:

"Attendance at any college is on the basis of a mutual decision of the student's parents and of the college. Attendance at a particular college is voluntary and is different from attendance at a public school where the pupil may be required to attend a particular school which is located in the neighborhood or district in which the pupil's family may live. Just as a student may choose to withdraw from a particular college at any time for any personally-determined reason, the college may also at any time decline to continue to accept responsibility for the supervision and service to any student with whom the relationship becomes unpleasant and difficult. Alabama State College seeks to give maximum service to every student who evidences a sincere willingness to accept the leadership and supervision of the college. The college is given authority and is made responsible for the administration of the regulations' as set up by the State Board of Alabama. Some excerpts from these official regulations are as follows:

"Every pupil, in addition to complying with the requirements fixed by this Board for entrance into said school, will be required to render strict obedience to all the rules and regulations, for the government of the school and for the conduct of the pupils thereof. The pupils shall conduct themselves in a manner becoming future teachers in the public schools of Alabama, and will be expected to show a spirit of loyalty to the institution they attend, and give willing and ready obedience to the President and faculty in charge of the school. Acts of insubordination, defiance of authority, and conduct prejudicial to discipline and the welfare of the school will constitute

grounds for suspension or expulsion from schools.

"Pupils may be expelled from any of the Colleges:

"a. For willful disobedience to the rules and regulations established for the conduct of the schools.

"b. For willful and continued neglect of studies and continued failure to maintain the standards of efficiency required by the rules and regulations.

"c. For conduct prejudicial to the school and for conduct unbecoming a student or future teacher in schools of Alabama, for insubordination and insurrection, or for inciting other pupils to like conduct.

"d. For any conduct involving moral turpitude."

These rules and regulations were promulgated in 1935, and apply to all colleges under the management and control of the State Board of Education. The courts have consistently upheld the validity of regulations that have the effect of reserving to the college the right to dismiss students at any time for any reason without divulging its reason other than its being for the general benefit of the institution. This is true as long as the dismissal is not arbitrary and falls within the classes specified for preserving ideals of scholarship or moral atmosphere. Waugh v. Board of Trustees, supra; Hamilton v. Regents of the University of California, supra; Lucy v. Board of Trustees, etc., D.C.N.D.Ala., C.A.No. 652; and the authorities referred to in 14 C.J.S. Colleges and Universities § 26, pp. 1360–1363; 79 C.J.S. Schools and School Districts § 503–b, pp. 449–450; and 55 Am.Jur., Universities and Colleges, § 22, p. 15.

■ Those cases cited by the plaintiffs to this Court which deal with elementary schools requiring compulsory attendance as opposed to state educational institutions of higher learning, permitting attendance upon a basis of mutual agreement, are not applicable in

Constitution of the United States or by any Act of Congress providing for equal

rights of citizens or of all persons within the jurisdiction of the United States."

this case.[7] Plaintiffs' complaint that they were expelled without formal charges and without having the opportunity of a hearing and that such action was in violation of their rights under the due process clause of the Fourteenth Amendment is not sustained by the majority of the applicable authorities.[8] These many decisions that are contrary to plaintiffs' contention as to this aspect of the case have been criticized,[9] but the fact remains where there is no statute or rule that requires formal charges and/or a hearing, as is the case in Alabama, the prevailing law does not require the presentation of formal charges or a hearing prior to expulsion by the school authorities.

In appraising all the testimony in this case, together with the several exhibits, this Court reaches the firm conclusion that these several plaintiffs in organizing their group and then presenting themselves at the public eating establishment on February 25, 1960, had as their primary purpose the protesting of the discrimination (because of color) on the part of that public eating establishment and others in this area, and had as their aim the intention of focusing public attention upon themselves and upon that discrimination. The obtaining of service was only incidental to those objectives. This Court is of the further opinion that the series of demonstrations, speeches, news releases, petitions, and resolutions that followed the initial demonstration and occurred prior to the expulsion of these plaintiffs was for the same purpose. This Court is of the firm opinion that these plaintiffs, in their zeal to focus public attention upon this area and what they considered to be illegal discrimination as to the members of their race by certain public officials in this area, acted without regard to their status as students at the Alabama State College and acted without considering the damage

they were doing to the orderly operation of the Alabama State College during this period.

This Court further finds and concludes in this case that the conduct of these plaintiffs and other students of the Alabama State College from February 25, 1960 until they were expelled or probated on March 5, 1960, in organizing, leading and actively participating in the several demonstrations, was calculated to provoke and did provoke discord, disorder, disturbance and disruption on the campus of the college and in the college classrooms, generally. This Court further finds and concludes that the conduct of these plaintiffs in persisting after warning by the president of the college was flagrantly in violation of the college rules and regulations, was prejudical to the school, constituted insubordination, resulted in inciting other pupils to like conduct, and, in general, was conduct unbecoming a student or future teacher in the schools. This Court is of the further conclusion that the action taken by the defendants as members of the State Board of Education and as officials of the Alabama State College was justified and, in fact, necessary in order that the college could operate and be operated in a proper manner. It is further concluded that the expulsion of these plaintiffs was in good faith, was in the exercise of the authority of the governing board of the Alabama State College, and was not an arbitrary action. It necessarily follows that such action did not operate to deprive any of these plaintiffs of their constitutional rights guaranteed them by the Constitution of the United States.

The pertinent observations, findings and conclusions of this Court, as herein recited, are not to be construed as either an approval or disapproval of the so-called "sit-in" demonstrations; the legality of such actions is not here involved. Nor is anything stated or concluded

7. West Virginia State Board of Education et al. v. Barnette et al., 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628.

8. See the annotation in 58 A.L.R.2d 903–920.

9. See "Dismissal of Students: 'Due Process'", 70 Harvard Law Review 1406.

herein to be construed as an approval or condonation of the operation of publicly owned and maintained lunchrooms where there is practiced discrimination solely on the basis of race in violation of the settled law in Derrington et al. v. Plummer et al., 5 Cir., 1956, 240 F.2d 922, certiorari denied 353 U.S. 924, 77 S.Ct. 680, 1 L.Ed.2d 719; City of Greensboro et al. v. Simkins et al., 4 Cir., 246 F.2d 425; and Department of Conservation & Development, etc., et al. v. Tate, et al., 4 Cir., 231 F.2d 615.

An appropriate order will be made and entered, in accordance with the foregoing.