Amelia and Inwood COLLINS, Velma Smith, Thomas C. Boyd, Leon Niecikowski, on behalf of themselves and others similarly situated, Plaintiffs,

v.

John F. BOLTON, Director of Department of Insurance of State of Illinois, as Liquidator of Multi-State Inter-Insurance Exchange, Defendants.

No. 68C 295.

United States District Court
N. D. Illinois, E. D.

June 27, 1968.

Marshall Patner, Gordon H. S. Scott, Legal Aid Bureau, Chicago, Ill., for plaintiffs.

Jerome Torshen, Lawrence Friedman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

Plaintiffs' Motion for Preliminary Injunction and for Convention of a Three-Judge Court

Defendant's Motion for Judgment on the Pleadings

This is a purported class action, brought by a group of policyholders of the Multi-State Inter-Insurance Exchange (Multi-State), a reciprocal automobile insurance company, against John F. Bolton, Director of the Department of Insurance of the State of Illinois. Defendant is a state officer charged under Illinois law with the regulation and supervision of insurance companies organized and/or doing business in the State. Ch. 73, § 204.1 et seq., Ill.Rev. Stat.

On September 11, 1964, pursuant to Ch. 73, § 800, Ill.Rev.Stat. defendant was appointed Liquidator of Multi-State in a Cook County Circuit Court proceeding (hereinafter known as the Liquidation Proceeding).[1] Thereupon, he immediately became vested with the title to all property, contracts and rights of action of the company. Ch. 73, § 803, Ill.Rev. Stat.

Under their policies, plaintiffs were subject to an assessable contingent several liability equivalent to their annual premiums. Pursuant to Ch. 73, § 819, Ill.Rev.Stat., defendant sought and won an order from the court in the Liquidation Proceeding, dated August 31, 1966, authorizing and directing him to levy an assessment against all persons who had been policyholders of Multi-State during the 12 month period ending November 30, 1963. Section 819 provides: (in pertinent part)

(1) In the event of the entry of an order directing the Director to rehabilitate or liquidate any company which has issued assessable policies or contracts of insurance, the Director may, with leave of court, at any time during the pendency of the proceeding, levy such assessment or assessments against the members or subscribers of the company, as may be necessary to pay all allowed claims in full, to the same extent * * * that such assessment or assessments might have been levied by the board of directors, attorney-in-fact, or other governing body of the company.

Pursuant to the above order, defendant drew up a list of assessable policyholders containing names, last known addresses, and the amount of assessment due from each listed person. The levy of assessments was approved, ratified and spread of record by the Court by order of September 13, 1966.

Subsequent to September 13, 1966, and pursuant to his authority to levy an assessment, defendant sent to all listed policyholders a notice of assessment rep-

1. People ex rel. Bolton v. Multi-State Inter-Insurance Exchange, No. 64 CH, 5262.

resenting that he was authorized to make such as assessment, and demanding payment of said assessment. If any policyholder fails to pay the sum demanded, Section 819 provides that upon defendant's application, the Court shall issue an order directing said person to pay the assessment or show cause why he should not be held liable to pay it plus costs.

Plaintiffs assert that they were given no notice of the Petition for leave to levy an assessment, that none is required by Section 819; and, consequently, since they had no notice of the Liquidation Proceeding or of the request for authority to assess they were deprived of their rights without due process of law, in violation of the 14th Amendment. They seek injunctive relief declaring Section 819 to be unconstitutional, and voiding the Circuit Court orders of August 31 and September 13, 1966, and request a preliminary injunction to restrain defendant from seeking to enforce the pending assessment order pending the completion of this suit. Also, under Title 28 U.S.C. § 2281 et seq., they request the convention of a three-judge court to hear their complaint. Jurisdiction is posited upon the Civil Right Statutes, 28 U.S.C. § 1343, and 42 U.S.C. § 1983, and upon the general federal question jurisdictional grant, 28 U.S.C. § 1331.

The plaintiffs purport to represent a class of 34,816 policyholders subject to assessment, and claim that the action is proper under recently amended Rule 23 (a) and 23(b) (1) (B) of the Federal Rules of Civil Procedure.

Defendant moves for judgment on the pleadings. He alleges that none of the cited statutes support jurisdiction, and that the Court lacks jurisdiction of the subject matter. In this opinion we will consider both defendant's motion and plaintiffs' application for a three-judge court.

■■ Initially, we believe the motion for judgment on the pleadings, pursuant to Rule 12(c), must be treated as a motion to dismiss for lack of subject matter jurisdiction. It raises only jurisdictional issues. A district judge to whom an application for a three-judge court is presented, of course, has authority to determine only jurisdictional questions, and may examine the merits solely to determine whether a substantial federal question is presented. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); Keyishian v. Board of Regents etc., 345 F.2d 236, 238 (2d Cir. 1965); Robinette v. Chicago Land Clearance Commission, 115 F.Supp. 669, 671 (N.D. Ill.1951).

■■ It is settled that a motion for a judgment on the pleadings is a motion for a judgment on the merits. 2A Moore, Federal Practice, ¶ 12.15; Roemhild v. Jones, 239 F.2d 492 (8th Cir. 1957). Since defendant alleges only jurisdictional grounds for dismissal, the proper course is to consider the motion as one to dismiss for lack of subject matter jurisdiction.

### Amount in Controversy

Plaintiffs assert that jurisdiction is proper under § 1331 which provides: (in pertinent part)

"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States."

On its face, the complaint undoubtedly alleges a claim based upon the Constitution of the United States. In passing upon the propriety of § 1331 as a basis for jurisdiction the issues to consider are whether the matter in controversy exceeds $10,000, and whether it arises under the Constitution or some federal law. If the complaint does not meet these tests, it must be dismissed for lack of subject matter jurisdiction. We will explore the substantiality of the federal question raised, infra, in considering whether to invoke a three-judge court. At this point, we will consider defend-

ant's contention that the $10,000 jurisdictional minimum is not present.

Defendant argues that plaintiffs' contingent liability under their policies is several rather than joint or common. Since each policy's contingent liability is only a small fraction of $10,000, and since each policyholder essentially contests the procedure utilized in serving the assessment against him, defendant argues that the claims may not be aggregated to satisfy the jurisdictional requisite. Plaintiffs contrarily argue that in a class action under the new Rule 23, aggregation is permissible.

Under the old Rule 23, aggregation was permitted in "true" class actions where the asserted claim was "joint" or "common" and concerned the interests of the plaintiffs as a body, rather than the interests of the individual plaintiffs. Brown v. Trousdale, 138 U.S. 389, 11 S. Ct. 308, 34 L.Ed. 987 (1891). But where the parties asserted "hybrid" or "spurious" class actions, where the claims were in reality only those relating separately to individual members of the "class", aggregation was disallowed. Troup v. McCart, 238 F.2d 289 (5th Cir. 1956); Andrews v. Equitable Life Assurance Society, 124 F.2d 788 (7th Cir. 1941); Scott v. Frazier, 253 U.S. 243, 40 S.Ct. 503, 64 L.Ed. 883 (1920). 3 Moore, Federal Practice, ¶¶ 23.08–.10. The language of the insurance contracts at bar makes clear that each policyholder's liability is several, rather than joint or common. Hence, under the pre-amendment

Rule 23 these claims would have constituted a "spurious" class action, and aggregation would not have been permitted. Aetna Insurance Company v. Chicago, R. I. & P. R. R. Co., 229 F.2d 584 (10th Cir. 1956); Andrews v. Equitable Life Assurance Society, supra; Matlaw Corp. v. War Damage Corp., 164 F.2d 281 (7th Cir. 1947).

New Rule 23, however, which became effective July 1, 1966, has eliminated the distinctions between "true" and "spurious" class actions, and has changed the emphasis from an abstract one based upon the legal relationships between the members of the class, to a pragmatic one exhibiting concern for the effect of class treatment upon judicial administration, and uniformity of decision.

Initially, we believe that this action is properly brought as a class action under Rule 23. It meets the requirements of Rule 23(a).[2] Joinder of all affected policyholders would be extremely impractical. Each policyholder presents the identical questions of law and fact, so that the claims of the representative parties are typical of the claims of the class. Finally, the representative parties are typical of the class and are represented by competent and conscientious counsel from the Legal Aid Bureau. We believe they fairly and adequately represent the members of the class.

Furthermore, the action meets the requisites of at least one and perhaps more of the subsections of Rule 23(b).[3] In

2. Rule 23(a) provides:
"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

3. Rule 23(b) provides:
"(b) Class Actions Maintainable. An action may be maintained as a class action

if the prerequisites of subdivision (a) are satisfied, and in addition:
"(1) the prosecution of separate actions by or against individual members of the class would create a risk of
"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially

addition to being impractical, the prosecution of separate actions on this claim would create the risks set forth in parts (1) (A) and (1) (B) of subsection (b). In addition, the question common to the class predominates over the issues affecting only individual members, since it involves a question central to the necessary procedures used by defendant in handling any troubled insurance company in Illinois. We believe a class action superior to other available methods for adjudication of the controversy, such as seriatim litigation.

The new standards of Rule 23, stressing effect of class treatment, rather than jural relationships, would seem to govern in determining whether the claims of all members may be aggregated to meet the requisite jurisdictional amount. It would seem unwarranted to revert to the tests used under the old rule to determine this issue. Whether plaintiffs' claims are "joint", "common", or "several" would now seem to be irrelevant once it is determined that the parties and issues are appropriate for class adjudication.

However, the few reported decisions on the point have reached opposite results. Both Alvarez v. Pan American Life Insurance Company, 375 F.2d 992 (5th Cir. 1967), from the Fifth Circuit, and Snyder v. Harris, 390 F.2d 204 (8th Cir. 1968), affirming 268 F.Supp. 701 (E.D.Mo.1967), from the Eighth Circuit, have indicated that aggregation remains proper only when the demands of the plaintiffs are joint and common, rather than separate or distinct. See DeLorenzo v. Federal Deposit Insurance Corporation, 259 F.Supp. 193, 195 n. 5 (S.D.N.Y. 1966).

On the other hand, Gas Service Company v. Coburn, 389 F.2d 831 (10th Cir. 1968), and Booth v. General Dynamics Corporation, 264 F.Supp. 465 (N.D.Ill. 1967), an opinion of Judge Will of this very district, have held that aggregation is permissible in all proper class actions. See Federal Savings and Loan Insurance Corporation v. Huttner, 265 F.Supp. 40 42 n. 2 (N.D.Ill.1967) (per Will, J.).

Both *Alvarez* and *Snyder* noted that nothing in the new rule nor the Committee Comments thereto (39 F.R.D. 98) suggested that the aggregation principle applied in connection with the old rule should be abrogated. They reasoned accordingly, that to allow aggregation in all class actions, would have the effect of expanding the scope of federal jurisdiction by providing a federal forum for those actions involving separate or distinct claims, which were not aggregable under the old Rule 23. The law has been clear since Sibbach v. Wilson, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941), that the delegation of rule making power to the Supreme Court under the Enabling Act (28 U.S.C. § 2072), does not authorize the expansion or contraction of jurisdiction conferred by statute. Indeed, Federal Rule 82, (as amended, effective July 1, 1966), provides that the rules shall not "be construed to extend or limit the jurisdiction of the United States district courts *. * *." Hence, *Alvarez* and *Snyder* concluded that to construe Rule 23 to

impair or impede their ability to protect their interests; or

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and ef-

ficient adjudication of the controversy. The matters pertinent to the finds include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

expend the class of cases in which aggregation is permissible, would be an unwarranted extension of the limits of federal jurisdiction.

We believe, as did Judge Lewis in *Coburn*, that *Alvarez* and *Snyder* misconstrue the effect of new Rule 23. First of all, to require determinations based upon the plaintiffs' legal relationships to one another is to resurrect the confusing distinctions which prompted the replacement of the old rule. There no longer remains any justification for distinguishing between types of class actions on any basis other than the pragmatic tests established by the new rule. We do not believe deviation is permitted for aggregation purposes. Certainly the *Alvarez* and *Snyder* decisions frustrate the desire of the Advisory Committee to achieve efficiency of judicial administration by reducing necessary time and expense and promoting uniformity of decision, without at the same time sacrificing procedural safeguards. See 39 F.R.D. at 102; *Coburn*, supra, 389 F.2d 831; Note 52 Minn.L.Rev. 509, 515 (1967).

The lesson of those cases is that plaintiffs will have to first determine whether their claims are joint or several, and will be able to utilize the class action procedure only in the former type of case, unless, of course, the claim of each is for more than $10,000. But it seems that a purpose of Rule 23 "is to provide a means of vindicating small claims," Dolgow v. Anderson, 43 F.R.D. 472 (S.D.N.Y. Jan. 3, 1968); Eisen v. Carlisle and Jacquelin, 391 F.2d 555 (2d Cir. March 8, 1968). Adoption of the *Alvarez* and *Snyder* rationale would frustrate that purpose as well.

Secondly, the expansion of jurisdiction arguments relied upon by *Alvarez* and *Snyder* seem to be unwarranted, although admittedly the grant of rulemaking power does not permit the expansion or contraction of substantive statutory law. But a construction of § 1331 which permits aggregation of claims in all properly maintained class actions does not expand the jurisdictional scope established by Congress.

As quoted in *Coburn*, Gibbs v. Buck, 307 U.S. 66, 72, 59 S.Ct. 725, 83 L.Ed. 1111 (1939), long ago established that aggregation is proper when the "matter in controversy" satisfies the jurisdictional amount. The function of Rule 23 in no way deviates from that principle. What it does is redefine the "matter in controversy." Under new Rule 23(b) (3), unlike the old Rule 23(a) (3), all parties which do not explicitly request exclusion from the class, are bound by the judgment. Van Gemert v. Boeing Company, 259 F.Supp. 125 (S.D.N.Y. 1966). Thus *in fact*, under the new rule the matter in controversy is the aggregate of the claims of the entire class. The amount of those claims may be aggregated under the rationale of Gibbs v. Buck. See Barron and Holtzoff, Federal Practice and Procedure, § 569 (1967 Supp. at 106). But the effect of Rule 23 is only to change the interpretation which must be given in the class action context, to the jurisdictional law expressed by *Gibbs*. This is not expanding the court's jurisdiction by rule.

Defendant's view of Rule 82 would have the effect of stifling the growth and improvement of procedural rules. Indeed, its position might have the effect of invalidating Rule 23(b) (3) as an illegal expansion over former Rule 23(a) (3). Since potential class members under the old rule were made parties for judgment purposes only at their request, the current provision has the effect of expanding the class of persons subject to the court's jurisdiction by making all potential class members parties, unless they "opt-out."

Likewise, the class action rule necessarily affects certain other jurisdictional *questions*, though it does not mean it expands or limits the court's jurisdiction. For instance, it provides a device for achieving diversity of citizenship. Diversity in class actions is judged only by the representative parties in the class. Stewart v. Dunham, 115 U.S. 61, 5 S. Ct. 1163, 29 L.Ed. 329 (1885); Irwin

v. Missouri Valley Bridge and Iron Company, 19 F.2d 300 (7th Cir. 1927). It follows that the class action gives the court jurisdiction over disputes involving non-diverse members of the class which it would not otherwise have.

The expansion of jurisdiction arguments used in *Alvarez* and *Snyder* fail to understand, we believe the proper meaning of Rule 82. They both rely upon the alleged lack of specific authority for allowing aggregation of all class actions under Rule 23. But Professor Benjamin Kaplan of the Harvard Law School, the Reporter to the Advisory Committee at the time new Rule 23 was adopted, has implicitly put the quietus to the arguments relied upon in *Alvarez* and *Snyder*, in a recent article. Kaplan, Continuing Work of the Civil Committee; 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv.L.Rev. 356 (1967). Although writing in his personal capacity, the following comments indicate what may have been the Committee's understanding of the jurisdictional issue: (at 399–400)

"We need not be long delayed by the suggestion that the provisions for the (b) (3) action, especially those which state that the judgment shall cover in terms all members of the class as defined (apart from opters-out), have the effect of extending jurisdiction despite the declaration of rule 82 that the rules 'shall not be construed to extend * * * the jurisdiction of the United States district courts * *.' 'Jurisdiction' 'here means subject matter jurisdiction, and in this respect rule 82 may describe an inherent limitation on the rulemaking power. The argument seems to be that only in the more 'standard' situations for class actions may the citizenship of members other than the actual parties be disregarded for diversity of citizenship purposes; that is, it is only in those situations that an ancillary principle operates to permit the judgment to cover the class notwithstanding absence of diversity as to some of the class members; and this principle cannot be modified by rule. Thus it would be argued that in actions under the new rule which would formerly have been spurious, the judgments cannot be given full reach to a class with non-diverse elements. But even if one should accept dubious doctrine about the outworn spurious category as immovable law, it would not be decisive of problems under the new rule. New rule 23 alters the pattern of class actions; subdivision (b) (3), in particular, is a new category deliberately created. Like other innovations from time to time introduced into the Civil Rules, those as to class actions change the total situation on which the statutes and theories regarding subject matter jurisdiction are brought to bear. From the start the Civil Rules elaborating and complicating actions through joinder of claims and parties, have profoundly influenced jurisdictional result. Similarly, the introduction of the ramified action meant that the statutes on appellate review had to be freshly interpreted. This is far from saying that the Civil Rules in the former case extended subject matter jurisdiction contrary to rule 82, or in the latter case subverted the received system of appellate review. Not only must new rule 23 be considered a fresh datum for deciding whether diversity of citizenship requirements are satisfied by the original parties or intervenors; it also presents a new complex in deciding questions of permissible 'aggregation' of amounts in controversy. And these can hardly be a complete list of the matters that will be collaterally affected by the new rule."

Rule 82 cannot obviate the necessity of interpreting the amount in controversy requirement in a sensible way. To ignore changes in class action rules in the process of interpretation, would undermine the purpose of the class action rule and derogate from the effective utilization of the jurisdictional requirement as well.

For all of the above reasons, we decline to follow *Alvarez* and *Snyder*, but join *Coburn* and *Booth* in permitting

claims to be aggregated in actions properly brought under Rule 23. The amount in controversy herein is well above the minimum requirement. Should we find that we possess subject matter jurisdiction herein, § 1331 would be a proper statutory basis for jurisdiction.

### Jurisdiction Under the Civil Rights Statutes

Since we have upheld jurisdiction under § 1331, it is unnecessary to decide whether the action is properly brought under § 1983, of Title 42.

However, it is true that many cases in this Circuit have held that § 1983 does not confer jurisdiction where the complaint seeks only to protect a monetary or property right. Ream v. Handley, 359 F.2d 728, 731 (7th Cir. 1966); Gray v. Morgan, 371 F.2d 172, 175 (7th Cir. 1966); McManigal v. Simon, 382 F.2d 408, 410 (7th Cir. 1967); Booth v. General Dynamics Corporation, 264 F.Supp. 465, 470 (N.D.Ill.1967); Robinette v. Chicago Land Clearance Commission, 115 F.Supp. 669, 674 (N.D.Ill.1951).

Plaintiffs seek to escape that rule on the ground that they assert not a deprivation of a property right, but a deprivation of procedural due process. Many courts have accepted such arguments and assumed jurisdiction even where property rights were the gist of plaintiff's aggrievement. E. g. Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964); Dixon v. Alabama State Board of Education, 186 F.Supp. 945 (M.D.Ala.1960); reversed on other grounds, thereby upholding jurisdiction, 294 F.2d 150 (5th Cir. 1961); Cobb v. City of Malden, 202 F.2d 701, 705 (1st Cir. 1953); McGuire v. Sadler, 337 F.2d 902 (5th Cir. 1964). However, virtually every time a person is deprived of a property right without due process, he is denied procedural fairness, simultaneously, so the argument as it stands is not persuasive.

Indeed, it appears merely a convenient manner for avoiding the jurisdictional bar to cases involving property rights, which was first expressed in Holt v. Indiana Manufacturing Company, 176

U.S. 68, 20 S.Ct. 272, 44 L.Ed. 374 (1900), and later in Hague v. C. I. O., 307 U.S. 496, 531, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). The rule has been criticized, as well as avoided. Note, 66 Harv.L.Rev. 1285, 1288 (1953).

In a case on virtually all fours factually with this one, Judge Parsons held that property rights are and should be protected by § 1983. Joe Louis Milk Company v. Hershey, 243 F.Supp. 351 (N.D.Ill.1965). And were we pressed to decide the issue, we would tend to agree with the analysis which he adopts, and which is expressed in the Harvard Law Review, Note, cited above. Nevertheless, we are not compelled to make a decision, and should observe that despite *Joe Louis Milk Company,* the Seventh Circuit continues to hold that § 1983 has no application where property rights capable of approximate valuation are involved. It expressly rejected the holding of *Joe Louis Milk Company* in Ream v. Handley, 359 F.2d 728, 731 (7th Cir. 1966).

### Is a Substantial Federal Question Presented?

Finally, we must decide whether or not a "substantial" federal question is presented in order to determine whether to dismiss the complaint or to convene a three-judge panel. Idlewild Bon Voyage Liquor Corporation v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); Swift and Company v. Wickham, 382 U.S. 111, 114–115, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); California Water Service Company v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938). As was stated in Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152 (1933):

> "The question may be plainly unsubstantial, either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought

to be raised can be the subject of controversy'. * * * "

Defendant's motion to dismiss asserts that the issue raised in the complaint has already been decided adversely to plaintiffs, and additionally that it is clearly without merit.

But it does not appear that the precise question raised here has previously been decided.

The general rule cited by defendant that policyholders and stockholders are not necessary *parties* to an assessment proceeding is not challenged here. E. g. Hawkins v. Glenn, 131 U.S. 319, 9 S.Ct. 739, 33 L.Ed. 184 (1889); Pink v. A.A.A. Highway Express, Inc., 314 U.S. 201, 62 S.Ct. 241, 86 L.Ed. 152 (1941); Supreme Council of the Royal Arcanum v. Green, 237 U.S. 531, 35 S.Ct. 724, 59 L.Ed. 1089 (1915). Plaintiffs do not claim that they must actually receive notice, or must be made parties to the Liquidation Proceedings. They only claim the right to receive notice of the Petition for Authority to Levy an assessment, and the further Liquidation Proceedings resulting in the assessment, so as to decide for themselves whether to attempt to intervene.

In several of the cases cited by defendants, the Court explicitly noted that under the relevant Minnesota statute, (involved in all the cases), shareholders were sent notice prior to the levy of the assessment and given an opportunity to appear at a hearing on the question of the necessity and amount of the assessment. Bernheimer v. Converse, 206 U.S. 516, 519, 27 S.Ct. 755, 51 L.Ed. 1163 (1907); Converse v. Hamilton, 224 U.S. 243, 252,

32 S.Ct. 415, 56 L.Ed. 749 (1912); Marin v. Augedahl, 247 U.S. 142, 145, 147, 38 S.Ct. 452, 62 L.Ed. 1038 (1918); Chandler v. Peketz, 297 U.S. 609, 611, 56 S.Ct. 602, 80 L.Ed. 881 (1936). The statutes examined in those cases afforded shareholders exactly the kind of notice, to which the instant plaintiffs claim entitlement.

Finally, another series of cases cited by defendant, involved legislation empowering the Comptroller of the Currency to declare the insolvency of national banks, and make assessments upon stockholders statutorily liable therefor. Kennedy v. Gibson, 8 Wall. 498, 75 U.S. 498, 19 L.Ed. 476 (1869); Forrest v. Jack, 294 U.S. 158, 55 S.Ct. 370, 79 L.Ed. 829 (1934); Crescent City National Bank v. Case, 99 U.S. 628, 629, 25 L.Ed. 448 (1879); Christopher v. Norvell, 201 U.S. 216, 26 S.Ct. 502, 50 L.Ed. 732 (1906); Casey v. Galli, 94 U.S. 673, 24 L.Ed. 168, 307 (1876).

Hence, none of the cases cited by defendant foreclose the issue raised today by plaintiff.

There may well be valid reasons why notice is not required prior to the authorization for levy of assessments. In the normal liquidation, either in insolvency or bankruptcy proceedings, the corporation, through its officers, defends the actions, and courts have held that shareholder interests are properly represented by the corporation.[4] The need for prompt action is greatest when it is determined that an insurance company is in financial difficulty. It may be unfeasible because of delay, or because of the expense of a large mailing, to send notice of the

---

4. Defendant states that the representative of Multi-State—the RCD Management Company—was notified of the liquidation proceeding, and represented the policyholder's interest therein. But plaintiff points out that the order of liquidation had dissolved the reciprocal company almost two full years before defendant requested leave to assess. Thus it was not in being when plaintiffs greatest interests were at stake.

If it is ultimately held that notice to the company alone is sufficient and plaintiffs' attack on the statute is rejected, the fact that the ostensible representative of the policyholders in the liquidation proceeding was no longer in existence at relevant times, conceivably could be raised before a one-judge court in support of an argument that the statute was unconstitutionally applied. Such an argument would be improper before a three-judge panel. Phillips v. United States, 312 U.S. 246, 252, 61 S.Ct. 480, 85 L.Ed. 800 (1941); Faubus v. United States, 254 F.2d 797 (8th Cir. 1958).

liquidation proceedings to every policyholder. Such delay and expense would, in some cases, dissipate assets, further the company's decline, and be to the detriment of the estate, its creditors, and the general public.

■■■ In addition, the statute provides for notification to each shareholder of the actual assessment. At that point he may object to the necessity of the assessment or its amount and may intervene in the liquidation proceeding to question the propriety of the assessment and seek reconsideration. Such notification was afforded in this case. Furthermore, even if the issue of the propriety of the assessment order is not raised by an intervening policyholder, each individual shareholder may raise defenses peculiar to himself in the course of the collection proceeding.

We are not certain Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), relied upon so heavily by plaintiffs, requires more than this.

*Mullane* was concerned with the sufficiency of notice sent to beneficiaries of a common trust fund administered by the defendant. The Court held that statutory notice by publication was insufficient as a basis for adjudication involving substantial property rights, since it is not impractical to mail personal notice to beneficiaries whose addresses are known. *Mullane* did not hold, however, that such notice must be received.

The statutory notice in *Mullane* related to court proceedings which made a judicial settlement of account "binding and conclusive as to any matter set forth in the account upon everyone having any interest" (339 U.S. at 309, 70 S.Ct. at 655) therein, and to finally settle all "questions respecting the management of the common fund." (at 311, 70 S.Ct. at 655).

■■■ The levy of assessment, for which no notice is provided herein, of course, is not finally binding upon policyholders, who receive notice thereafter and are able to challenge the necessity and amount of the assessment. This is quite different from *Mullane,* where the insufficient notice pertained to "binding and conclusive" judicial action.

However, the argument can be made, and, with some practical force, that once the assessment is made, a heavy burden is placed upon the policyholder to overturn it, and that he should be notified *prior* to its issuance, when the burden to forestall it might not be as difficult, and when he might prevent the consequences of its issuance from occurring.

This argument is to be weighed against the alleged practical convenience of commencing liquidation proceedings and allowing assessment without notice to the policyholders. At this point, it appears plaintiffs' argument is not terribly persuasive, but, of course, no evidence has yet been received in support of the parties' respective positions.

■■■ The substantiality of the question raised is to be determined, in any event, from the allegations of the complaint. Mosher v. City of Phoenix, 287 U.S. 29, 30, 53 S.Ct. 67, 77 L.Ed. 148 (1932); Levering and Garrigues Co. v. Morrin, 289 U.S. 103, 105, 53 S.Ct. 549, 77 L.Ed. 1062 (1933). Failure to give notice when substantial rights are involved is a serious problem. In considering a question factually indistinguishable from this one and involving the application of the same statute, Judge Parsons stated he would have invoked a three-judge court if the issue of the statute's constitutionality had been presented. Joe Louis Milk Company v. John Bolton, No. 64 C 1478 (unreported) (N.D.Ill., June 26, 1967).

Although the issues before Judge Parsons presumably were different, and, he, therefore did not have the benefit of briefs on the instant issues, we believe at least that his instinct to convoke a three-judge court was correct.

■■■ Although there is some likelihood that the issues raised by plaintiffs may be difficult to sustain, we believe at least they should have the opportunity to present them before a three-judge

court. A claim that official action is unconstitutional should not be dismissed for lack of jurisdiction unless it appears, to a legal certainty, that the claim is insubstantial and frivolous. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Wheeldin v. Wheeler, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963). We believe the same stringent requirements should apply to a challenge to a state statute on constitutional grounds.

 As Judge Parsons stated in Joe Louis Milk Company v. Hershey, 243 F. Supp. 351, 354–55 (N.D.Ill.1965):[5]

"Experience teaches that the wiser and better practice is for the court to assume jurisdiction for the purpose of determining whether the complaint states a claim upon which relief can be granted. Rogers v. Provident Hospital, 241 F.Supp. 633 (N.D.Ill.1965); Harrison v. Murphy, 205 F.Supp. 449 (D.Del.1962); Byrd v. Sexton, 277 F. 2d 418 (8th Cir. 1960)."[6]

 Accordingly, we find that the complaint states a "substantial" constitutional question, and pursuant to 28 U.S.C. § 2284, will immediately request Chief Judge Castle of the Seventh Circuit, to convene a three-judge court. The motion to dismiss for lack of subject matter jurisdiction is denied.

 However, under Sections 2281 and 2282 of Title 28, we may not issue either an interlocutory or permanent injunction as a single-judge court. That function is reserved to the full three man panel. Defendant has voluntarily refrained from taking steps to collect the pending assessments while these motions have been pending. We would hope that he would continue his inaction until the three-judge court has an opportunity to act upon the merits of this complaint. We, however, are without power to order

him to continue his course of action. But, if he insists upon proceeding, the three-judge court would have power to allow preliminary equitable relief, if appropriate. The motion for a preliminary injunction, is therefore continued for consideration by the full court.

---

5. This is the same case, of Judge Parsons, albeit a different opinion on other issues, which we cite supra. By 1967, when the unreported opinion was rendered, John Bolton, the instant defendant, had succeeded Richard C. Hershey as Illinois Director of Insurance.

6. A motion to dismiss for failure to state a claim is addressed to the merits, and must be referred to a three-judge panel. Robinette v. Chicago Land Clearance Commission, 115 F.Supp. 669, 671 (N.D. Ill.1951).